(86 South. 89)

## VACALIS v. STATE. (1 Div. 349.)

(Court of Appeals of Alabama. Feb. 10, 1920. Rehearing Denied April 6, 1920. On Mandate from Supreme Court, June 22, 1920.)

1. WITNESSES ☞363(1) — INTEREST WHICH MIGHT SHOW BIAS ALWAYS ADMISSIBLE.

The interest of a witness which might bias his testimony may always be shown by the party against whom such witness testifies, and such is true in a criminal case.

2. CRIMINAL LAW ☞698(3)—No ERROR IN OVERRULING OBJECTION TO TESTIMONY PREVIOUSLY INTRODUCED WITHOUT OBJECTION.

Where a witness had already testified without objection to matter which was called for by a question, there was no error in overruling a general objection to the question.

3. CRIMINAL LAW ☞380—WHETHER OR NOT DEFENDANT HAD BEEN ARRESTED NO EVIDENCE OF CHARACTER.

In a criminal prosecution, court did not err in sustaining an objection by the state to a question to defendant, "Have you ever been arrested before?" as an answer to such question would be no evidence of good or bad character.

4. WITNESSES ☞297 — CROSS-EXAMINATION HELD SUCH AS MIGHT INCRIMINATE.

A witness for the state in a criminal prosecution could not be required to answer the question, "You have been stealing from him all that time?" over the solicitor's objection, since it would have forced the witness to give testimony which may have incriminated him.

5. CRIMINAL LAW ☞829(1) — REFUSAL OF WRITTEN CHARGES COVERED BY ORAL CHARGE HARMLESS.

The refusal of written charges, covered by the oral charge of the court, or by written charges given, is harmless, under Acts 1915, p. 815.

6. WITNESSES ☞2(1)—LAW SECURES TO DEFENDANT COMPULSORY PROCESS FOR PROPER PRESENTATION OF CASE.

The law secures to an accused compulsory process for a proper presentation of his case, and to that end courts will require unwilling witnesses to answer all proper questions.

7. WITNESSES ☞198(2), 373—KNOWLEDGE OF ACCOMPLICE OF AGREEMENT OF COUNSEL FOR IMMUNITY NECESSARY, BEFORE INTERROGATING COUNSEL, AND, IF KNOWLEDGE EXISTED, ATTORNEY'S COMMUNICATION WAS PRIVILEGED.

An attorney of a witness charged with the same offense as defendant could not be required to testify as to whether or not he had on behalf of the witness made an agreement with the state as to immunity from punishment if the witness should testify, since such evidence was illegal unless the witness himself was connected with the agreement or knew thereof, and, if the witness had such knowledge, it was a privileged communication, under the principle recognized in Code 1907, §§ 3962, 4012.

Appeal from Circuit Court, Mobile County; Claud A. Grayson, Judge.

Artemis Vacalis was convicted of receiving stolen property, and he appeals. Reversed and remanded after affirmance by this court, in accordance with the mandate of the Supreme Court on certiorari. 204 Ala. 345, 86 South. 92.

Brooks & McMillan, of Mobile, for appellant.

The communication was not privileged. 29 Ala. 254; 67 Ala. 164; 86 Ala. 69, 5 South. 674; 124 Ala. 268, 27 South. 420. The interest of a witness, which might bias his testimony, may always be shown by the party against whom he testified. 39 South. 580; 171 Ala. 19, 55 South. 159. The court erred in its oral charges, marked A and B. 8 Ala. App. 257, 62 South. 959; 33 Ala. 434; 41 Ala. 393. Counsel discuss other assignments of error, not deemed necessary to be here set out.

J. Q. Smith, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

If the communication was not privileged, it was at least an offer of compromise, and as such not admissible. 2 Ala. App. 183, 56 South. 64; 73 Ala. 527; 148 Ala. 603, 41 South. 466. Counsel discuss other assignments of error, but without further citation of authority.

MERRITT, J. [1] The defendant was convicted and sentenced for the offense of receiving stolen property, knowing that it was stolen, and not having the intent to return it to its owner. Ed Pickens, who it appears was also charged with the same offense, testified as a witness for the state, and on cross-examination stated that nobody at all promised him immunity if he would testify, that he was not positive that the state promised him that he would go free if he would come in and testify against a number of people, that his lawyer did not tell him to testify and he would go free, that he was not testifying for the purpose of getting out of his own thievery, and that his trial had been put off from time to time waiting on the cases against the defendant. The defendant, in offering his testimony, called as a witness Tisdale J. Touart, and asked him this question:

"Have you not, for and on behalf of this negro, Ed Pickens, made an agreement with the state as to immunity from punishment?"

The witness replied:

"I claim my privilege as counsel, and decline to testify in regard to anything that I have said or done in this case."

Defendant's counsel then and there stated to the court that he expected to show that the witness had made an agreement with the

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

state, for and on behalf of Ed Pickens, by which Ed Pickens should go free in consideration of Ed Pickens testifying in these cases. The court declined to let the witness answer, and the defendant excepted. It is clear that the witness could not claim that the agreement called for was confidential, for it did not call for anything that had transpired between witness and his client, but what had taken place between witness and the solicitor. 40 Cyc. 2063, and authorities cited. While this agreement, if had, was not such as to come within the class of exemptions allowed on account of the relationship of attorney and client, yet, if it was a fact that the witness had been promised freedom on account of his testifying against his alleged partner in crime, it was competent to show this, as showing his interest in the case, and for the jury to say on this account what weight they would give his testimony. The witness had not refused to testify as to what took place between him and his attorney, and did not claim any immunity by virtue of the relationship of attorney and client, and had denied that any such hope had been held out to him, and, if it could have been shown to the contrary, it was one way of impeaching him. It is true no specific predicate was laid as to what particular person made this alleged promise, but the defendant was cut off, so to speak, in the very beginning by the witness Touart declaring that the relation of attorney and client existed between him and Pickens, and defendant's counsel stated enough to at least indicate that he proposed to show that the witness Pickens was testifying "with the hope of reward and the fear of punishment" before him. If the defendant could have shown this, he ought to have been so allowed, and the ultimate effect of the court's ruling was to deprive him of so doing, and in this respect the court was in error. The interest of a witness, which might bias his testimony, may always be shown by the party against whom such witness testifies. McGehee v. State, 171 Ala. 19, 55 South. 159; Borck v. State (Sup.) 39 South. 580.

There was no error in that part of the oral charge as to the guilty knowledge of the defendant, and the same was fully covered by written charges A and B.

[2] Warner Speed, who was employed as a detective by the prosecutor, and was called as a witness by the state, testified on cross-examination, just as to his employment, how he was paid, and all the details as to his employment. He was asked by the solicitor: "Were you paid regularly, or were you paid only on conviction?" Defendant made general objections to the question, which were sustained. There was no error in this respect. The question had already been answered.

[3] The defendant was asked, "Have you ever been arrested before?" and, the objec-

tion being sustained, reserved an exception. Whether the defendant had ever been arrested was no evidence of his good or bad character, and, further, it was not asked for what he had been arrested.

[4] The witness Pickens was asked by defendant, "You have been stealing from him all that time?" and the solicitor's objection thereto was sustained. The question, if not otherwise objectionable, would have forced the witness to give testimony which may have incriminated him. 12 Ency. Dig. Ala. Repts. p. 1242.

[5] Written charges, asked in writing and refused to the defendant, were in effect to give the affirmative instruction as to the ownership of the property. There was testimony tending to support the allegations of the indictment as to the ownership of the property, and on this account the charges were properly refused. General assignments of error are predicated upon the proposition that the court erred in refusing certain charges in writing, to the effect that the defendant would not be guilty unless he actually knew the goods were stolen. This court held such charges to be good in the case of Nick Canellos, 84 South. 396,[1] and reversed the case for the refusal to give such charges. The situation is different in the instant case, however, in that the point here is fully covered by other written charges, A and B, and in the oral charge of the court. The refusal of written charges covered by the oral charge of the court, or by written charges given, is harmless. Acts 1915, p. 815.

The majority of the court concur with the conclusion of MERRITT, J., except the following:

The defendant was convicted and sentenced for the offense of receiving stolen property; the amount involved making it a felony. Ed Pickens was charged by separate indictment in the same court with being a particeps criminis. Ed Pickens, while being examined as a witness for the state, on cross-examination testified that he had not been promised immunity if he would testify in behalf of the state; that he was not testifying for the purpose of "getting out of his own thievery." He further testified that his trial had been put off from time to time, awaiting the trial of the cases against the defendant.

The defendant, in offering his testimony, called as a witness Tisdale J. Touart, an attorney at law, and asked him this question:

"Have you not, for and on behalf of this negro, Ed Pickens, made an agreement with the state as to immunity from punishment?"

To which the witness replied:

"I claim my privilege as counsel and decline to testify in regard to anything that I have said or done in this case."

---

[1] Ante, p. 278.

There was no objection to the question by the state, but counsel for defendant stated to the court that he expected to show that the witness had made an agreement with the state for and on behalf of Ed Pickens, by which Pickens "shall go free in consideration of his testifying in the case." Thereupon the witness stated that he was attorney for Ed Pickens and declined to testify on the ground that it is a privileged communication, and the court sustained the objection to the question asked, and did not permit him to answer the question. To this action the defendant reserved an exception.

[6, 7] As is contended in appellant's brief, it may be admitted as elementary, as contended by appellant's counsel, that the law secures to the defendant compulsory process for a proper presentation of his case, and to that end courts will require unwilling witnesses to answer all proper questions. But it is equally well settled that trial courts will not be put in error for refusing to compel witness to answer illegal or improper questions. If the purpose of the defendant was to show bias on the part of the witness Pickens, it would be necessary to connect Pickens with the agreement, if such there was, between Touart and the state. This was not shown, nor was it offered to be shown, by defendant's counsel in his statement to the court. Neither do we think it could have been shown by the witness Touart, who was the attorney for Pickens in the prosecution against him involving this transaction. It is said in 1 Greenl. Ev. § 237:

"The rule is clear and well settled that the confidential counselor, solicitor, or attorney of the party cannot be compelled to disclose papers delivered, or communications made to him."

And Lord Chancellor Brougham added:

"This precaution is not qualified by any reference to a proceeding pending or in contemplation." Greenough v. Gaskell, 1 My. & K. 101.

If touching matters that come within the ordinary scope of professional capacity, either from a client, or on his account and for his benefit, in the transaction of his business matters, which they know only through their professional relation to the client, they are not only justified in withholding it, but bound to do so, and courts will not compel them to disclose this information. The reason for this rule is clearly stated in 1 Greenl. Ev. § 238; 19 A. & E. Ency. (1st Ed.) p. 128.

Any information which Touart had, and which was sought by defendant's counsel, that would have been binding on Pickens, could only have come to him in his representative capacity as attorney, and therefore he was well within his rights in declining to answer the question, and the court did not err in refusing to force him to do so. If Touart had the agreement with the state, independently and without the knowledge of Pickens, the testimony would be illegal, as not connecting Pickens with it. If it was with the knowledge and consent of Pickens, then it would be a privileged communication. The foregoing principle is recognized in sections 3962 and 4012 of the Code of 1907.

It follows that the judgment of the trial court is without error, and therefore must be affirmed.

Affirmed.

June 22, 1920. Reversed and remanded, in accordance with the mandate of the Supreme Court, rendered in the case of Ex parte Artemis Vacalis, 204 Ala. 345, 86 South. 92.