## BODINE v. STATE. (8 Div. 931.)

(Court of Appeals of Alabama. May 16, 1922.)

**1. Homicide ⬅161—Testimony as to nature and extent of wound admissible on issue of intent.**

In prosecution for assault with intent to murder, testimony as to the nature and extent of the wound of injured party inflicted by the defendant was admissible to show the intent of the accused.

**2. Witnesses ⬅287(4)—Redirect examination to amplify or explain matters testified to on cross-examination held proper.**

Where defendant elicited on cross-examination of a witness for the state that the defendant and the witness did not speak to each other since a previous trial, redirect examination of the witness as to which of the two quit speaking to the other first *held* proper.

**3. Criminal law ⬅1170½(2)—Cross-examination of defendant's witness as to whether he had been a witness in former trial held not error.**

Testimony of defendant's witness on cross-examination in answer to question whether he had been a witness in the case during a previous trial *held* not error, since his affirmative answer, if it affected the defendant at all, was favorable to him.

**4. Witnesses ⬅267—Wide latitude allowed on cross-examination.**

On cross-examination a wide latitude, resting in the discretion of the court, is allowed.

**5. Criminal law ⬅683(1)—Rebuttal testimony of witness for state as to fact brought out during defendant's testimony held proper.**

In prosecution for assault with intent to murder, in which there was testimony for the defendant that a certain person had induced another person to write a statement for him to the effect that he had given the prosecuting witness his knife, and that such person had admitted that the prosecuting witness had his knife, rebuttal testimony of such person testifying as a witness for the state as to whether he had permitted prosecuting witness to have his knife *held* proper.

**6. Criminal law ⬅683(1)—Rebuttal examination of prosecuting witness as to whether he had called defendant a "rascal," as defendant testified, held proper.**

In prosecution for assault with intent to murder,·in which there was testimony by defendant's witness that prosecuting witness, referring to defendant, said he was going to kill the "low-down rascal," rebuttal examination of prosecuting witness as to whether he had called defendant a "rascal" *held* proper.

**7. Witnesses ⬅274(1)—Refusal to exclude testimony, ·on cross-examination of sheriff testifying to defendant's good character, that he had twice arrested defendant, held error.**

In prosecution for assault with intent to murder, in which a sheriff testified that the general character of the defendant was good, and was asked, on cross-examination as to whether he had not arrested the defendant several times, refusal to exclude answer that he had twice arrested the defendant *held* reversible error, in the absence of a showing or offer to show why the defendant had been arrested by the sheriff.

**8. Witnesses ⬅274(2)—Court has discretion in permitting cross-examination of defendant's character witness as to reports of specific derogatory conduct.**

It is discretionary with the court to permit cross-examination of a witness who has testified to the general good character of the accused as to what he has heard of specified derogatory acts or conduct committed, or reputed to have been committed, by the accused.

**9. Witnesses ⬅274(1)—Cross-examination of character witness for defendant as to number of times witness had seen defendant drunk held improper.**

In prosecution for assault with intent to murder, cross-examination of witness as to defendant's general good character as to number of times witness had seen defendant drunk *held* improper.

**10. Criminal law ⬅725—Improper argument against letting defendant off with a fine held ground for reversal.**

In prosecution for assault with intent to murder, statement of solicitor, in argument to jury, that "you should not let this defendant off with a fine; putting a fine on defendant in this case means putting a fine on his father; his father will pay it, and it will be no punishment to him," *held* ground for reversal.

**11. Criminal law ⬅829(1)—Refusal of requested charges covered by charge given no error.**

Refusal of requested charges fairly and substantially covered by the oral charge of the court and by given written charges *held* not error.

**12. Criminal law ⬅814(3)—Charges not predicated upon evidence properly refused.**

Refusal of requested charges not predicated upon the evidence *held* not error.

**13. Homicide ⬅116(4)—Danger to defendant, to make self-defense available, must have been real or reasonably apparent to reasonable person.**

In prosecution for assault with intent to murder, the danger to defendant, to have justified him in shooting the prosecuting witness, must have been either real or reasonably apparent to a reasonable person, the mere fact the defendant himself thought that he was in danger being insufficient.

**14. Homicide ⬅300(5).—Instruction authorizing jury to draw inferences from fact that injured person was looking for defendant held misleading.**

In prosecution for assault with intent to murder, involving self-defense issue, instruction submitting question as to whether injured person was looking for defendant, and authorizing jury to draw all such reasonable inferences which such fact would warrant, *held* mislead-

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ing, since, even if injured person was looking for defendant, his motive in so doing might not have been improper.

**15. Criminal law ⚖️935(1)—Denial of motion to set aside verdict proper where evidence was conflicting.**

Where there was a conflict in the evidence, and there was ample evidence to justify the jury in finding defendant guilty, refusal of motion to set aside verdict on the ground that it was against the weight of the evidence, and to grant the defendant a new trial, *held* proper.

Appeal from Circuit Court, Marshall County; W. W. Haralson, Judge.

Elbert Bodine was convicted of an assault with intent to murder, and he appeals. Reversed and remanded.

The following charges were refused to the defendant:

(29) "If the defendant intended, when he shot Gilley, to kill him, yet, if he did so intend, he would not be guilty of any offense if, without fault on his part, that the prosecutor, Gilley, and Jarman were so conducting themselves that they created in the mind of the defendant the reasonable and honest belief that they, or one of them, was about to do him some serious bodily harm, and that there was no other reasonable way out of the danger, and that he reasonably and honestly believed that it was necessary to shoot to relieve him from such danger, he would be guilty of 'no offense."

(30) "It is a proper inquiry, in consideration of all the facts in this case, for the jury: Why were Gilley and Jarman at Sorter's store? Were they seeking the defendant, or were they on some other mission? And, should the jury find or believe from all the facts and circumstances that they were looking for Bodine, you are authorized to draw all such inferences, reasonably, which such facts would warrant, and consider such inference in connection with all other matters and facts in evidence, and if, from such consideration of all the facts and circumstances and inferences thus drawn from the proven facts, you have a reasonable doubt of the defendant's guilt, you should find him not guilty."

John A. Lusk & Son, of Guntersville, for appellant.

The court erred in the admission and exclusion of evidence, as pointed out in the assignment of errors. 161 Ala. 60, 49 South. 794; 170 Ala. 5, 54 South. 111; 77 South. 335; 200 Ala. 154, 75 South. 902; 89 South. 303; 94 Ala. 94, 10 South. 553; 60 Ala. 441; 22 C. J. p. 454. The fact that the sheriff had arrested defendant on two occasions, the cause therefor not being shown, was highly prejudicial to the defendant. 88 Ala. 116, 6 South. 758, 6 L. R. A. 301; 17 Ala. App. 383, 84 South. 879; 17 Ala. App. 613, 88 South. 156; 117 Ala. 93, 23 South. 130; 12 Ala. App. 567, 68 South. 478. The court erred in failing to exclude remarks of solicitor as objected to. 2 Ala. App. 281, 56

South. 742; 88 Ala. 476, 6 South. 910; 104 Ala. 471, 16 South. 538; 159 Ala. 51, 48 South. 662; 105 Ala. 86, 17 South. 184.

Harwell G. Davis, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

All the testimony as to condition of assaulted party, and as to wound and length of time confined from the same, was relevant. 89 South. 303. There was no error as to the evidence of bias of the witness to whom defendant refused to speak. 161 Ala. 25, 49 South. 824; 12 Michie, Dig. 1237. There was no error in the rulings on the other questions of evidence submitted. 12 Michie's Dig. 1318; 4 Michie's Dig. 158, 314.

BRICKEN, P. J. The defendant was charged by indictment with the offense of assault with intent to murder. From a judgment of conviction for this offense, he appeals.

The appellant, while not required so to do by the rules of practice, assigned errors, 38 assignments in all, but in brief 17 of these assignments have been specifically abandoned, and insistence of error is predicated upon the remaining assignments which will be treated in the order in which they appear.

[1] Several of these assignments, appearing first, relate to the rulings of the court upon the testimony, and refer to questions and answers of the witnesses as to the condition of the injured party after the shooting. Each of the exceptions reserved in this connection has been examined, and in our opinion is without error of an injurious nature affecting the substantial rights of the defendant. The court's rulings were manifestly based upon the theory that the condition of the injured party as a result of the alleged assault committed by defendant is relevant in order to show the nature and extent of the assault complained of. The testimony as to the nature and extent of the wound was admissible for the purpose of showing the intent of the accused. Phillips v. State, 161 Ala. 60, 49 South. 794. As stated in Phillips Case, supra:

"It afforded reasonable inferences as to the mechanism of the assault, the fierceness of the attack, and these things were of the res gestæ of the offense charged."

In the case of Brown v. State, 142 Ala. 287, 294, 38 South. 268, 269, the Supreme Court said:

"The length of time that the assaulted party is confined as a result of the wound inflicted on him by the defendant, is material to the issue as to whether or not there was an intent to kill, as the extent of the wound may shed light upon the subject and would be a proper consideration for the jury in determining the intent."

⚖️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

See, also, Little v. State (Ala. App.) 89 South. 303;[1] this case appears to us to be in point, and justifies the rulings of the court below in the instant case in this connection.

[2] On cross-examination of state witness Nailor, the defendant brought out the fact that the state of feelings between this witness and the defendant "were all right when he talked with him in Guntersville, but he seemed like he did not see when I spoke to him and he did not see me. * * * That he [witness] and Bodine [defendant] pass each other many times and do not speak, since the other trial in this case since Bodine quit speaking." On redirect examination the court, over the objection of defendant, allowed the state to ask this witness, "I will ask you which one quit speaking to the other first?" and the witness answered, "He did." There was no error in this ruling; the defendant on cross-examination had opened this scope of inquiry, and matters brought out on cross-examination may be further explained and exemplified on redirect examination. The question under investigation was the state of feeling of the witness as to the defendant, and, while it may be inferred that bad or unfriendly feelings exist between men who do not speak, although known to each other, the answer of the witness was calculated to refute this inference, and it was a question for the jury in considering and weighing the testimony of this witness as to whether or not his not speaking to the defendant "since the other trial" was due to the fact of his bad feelings toward defendant or to the fact that the defendant had first refused to speak to witness. Moreover, it may be easily inferred by the testimony of this witness brought out by defendant on cross-examination that the cause of his not speaking to defendant since the other trial was because the defendant would not speak to him. We think the insistence of the defendant that this question and answer had the effect of entering into the merits as to who was at fault in such state of ill feeling is untenable. We cannot and do not place such construction upon this inquiry. Noel v. State, 161 Ala. 25, 49 South. 824; 12 Mich. Ala. Dig. p. 1237, § 8.

[3, 4] Thurston Tidmore, a witness for defendant, was examined on direct examination. On cross-examination the solicitor asked him if he had been a witness in this case before. The defendant objected to the question on general grounds, and the court overruled the objection, and the defendant excepted. In this there was no error. In the first place, if the question affected the defendant one way or another, the answer was favorable to the defendant, as the witness answered it in the affirmative. In the second place, it was on cross-examination, in which a wide latitude is allowed, resting largely in the discretion of the court. Further than that it may be said that the answer to the question might have had some tendency to show interest or bias on the part of the witness in advising the defendant after the previous trial that he knew something about the case or that the defendant had arranged for his attendence for some special purpose. Byrd v. State, 17 Ala. App. 301, 84 South. 777.

[5] One Ervin Jarman had previously testified for the state, and was again offered in rebuttal, when he was asked by the solicitor the following question: "Is it true that you did let Gilley have the knife?" This was a proper question, as it was in rebuttal of the matter brought out by the defendant. Defendant's witness Bud Hampton had testified that he knew Jarman, and Jarman told him to write a certain statement for him to the effect that he (Jarman) let Gilley have a knife, and that Hampton thereupon wrote the statement to the effect that he did let Hobart Gilley have the knife. The defendant also testified that he asked Jarman if the knife was his, and Jarman admitted that it was. Also, the defendant testified that immediately after he shot he turned to Jarman and asked him, "How come you to give that knife to Gilley?" The defendant also testified that Jarman had Hampton to write the statement to the effect that he did give Gilley the knife. See, also, a statement in the testimony of Allen Hard wherein he testified that Jarman said to him, "All I hate about is I let Gilley have my knife." This question objected to sought testimony in rebuttal of what the defendant had brought out, and the court properly allowed the question to be asked. 12 Michie's Alabama Digest, p. 1318, § 314.

[6] The injured party, Gilley, was recalled by the state, and asked, "Did you call Bodine a rascal?" The defendant objected to the question. The court overruled the objection and defendant excepted. This was in rebuttal of the testimony given by defendant's witness Thurston Tidmore. He testified that Gilley said he was going to kill the "lowdown rascal," referring to Bodine. For this reason, and under the authority last above cited, the court properly allowed this question, seeking, as it did, to rebut matter brought out by the defendant.

[7, 8] The defendant examined the sheriff, I. B. Hyde, who testified that he knew the general character of the defendant in the neighborhood where he lived, and, further, that his general character was good. On cross-examination of this witness, over the objection and exception of the defendant, the state's counsel was permitted to ask the witness, "You have arrested him several times, haven't you?" And the witness was required to answer, "Only twice, as he recalled." The court overruled the motion of defendant to exclude this answer. In these rulings the

court committed reversible error. While it is permissible, on the cross-examination of a witness who has testified to the general good character of the accused, to interrogate him with reference to what he has heard of specified derogatory acts or conduct committed or reputed to have been committed by the accused, and while it is true that the extent and range of such cross-examination is largely within the discretion of the court, it is nevertheless true that an abuse of this discretion is not permissible, and, where it affirmatively appears, as here, that such discretion has been abused and the authority of the court in this connection has been exceeded, error of a reversible nature is committed, and the defendant is entitled to have such injurious and erroneous ruling corrected. The beneficial effect of evidence of the good character of the defendant should not be impaired, detracted from, or depreciated by an improper inquiry of this character. There was nothing to show why the defendant was arrested, whether the arrest was a proper one or not, and no offer was made to prove that these arrests were the result of misconduct on the part of the defendant, or that they related to reputed acts upon his part derogatory in their nature, or that would or could have the tendency to reflect upon his good character as a citizen. That this unauthorized inquiry was injurious and had the tendency or may have had the tendency of prejudicing the defendant in the minds of the jury cannot be doubted. It appears to us unfortunate that a case of this character should be burdened by a useless and unnecessary inquiry of this sort. In Vacalis v. State, 17 Ala. App. 521, 86 South. 89, it is said:

"Whether the defendant had ever been arrested was no evidence of his good or bad character, and, further, it was not asked for what he had been arrested."

Counsel for appellant cite numerous cases on this insistence of error, and aptly state the insistence as follows:

"The state was allowed to prove by Sheriff Hyde that he had arrested the defendant on two occasions. What for? Nothing to show. Was it for any offense involving moral turpitude? Was it for allowing a hog to run at large or a dog to go untaxed? Was it for a fight, or merely for cussing out some one?"

As before stated, we are of the opinion that the exceptions taken in this connection must be allowed, as the objection to the question as framed should have been sustained, and the motion to exclude the answer should have been granted.

[9] Witness J. H. Carter on direct examination testified as to the general good character of the defendant in the community where he lived. On cross-examination the court overruled defendant's objection to the question by the solicitor, "Did you ever see him drunk?" The objection should have been sustained. It does not come within the rule stated in Vaughan v. State, 201 Ala. 472, 78 South. 378. In that case—

"the defendant introduced a number of witnesses who testified to the good character of the defendant. * * * Upon cross-examination of these witnesses the state was permitted to ask if they had not heard of the defendant * * * being drunk and gambling with cards."

This was held not to be reversible error. This was permissible not as evidence affecting the character of the defendant, but as evidence affecting the credibility of the witness testifying to good character. Vaughan v. State, supra. The question here dealt with an alleged particular isolated act purporting to come within the personal knowledge of the witness, and not dealing with or affecting the repute of the defendant. However, the witness answered that he had never seen the defendant drunk, and, this answer being favorable to defendant, no injury resulted.

[10] In his argument to the jury the solicitor stated:

"You should not let this defendant off with a fine; putting a fine on defendant in this case means putting a fine on his father; his father will pay it and it will be no punishment to him."

Court overruled defendant's objection to this portion of the argument of the solicitor, and denied the motion to exclude it from the consideration of the jury, and to these rulings the defendant excepted. In making this unauthorized statement the solicitor transcended the bounds of legitimate argument. The law placed the responsibility upon the jury to determine from all the evidence in the case, and from the law as given by the court, whether the defendant should be convicted of the felony as charged in the indictment, or of a misdemeanor comprehended in the greater charge, and no such consideration as the one here urged should influence the jury in their deliberations in this respect. This argument had the tendency to prejudice the jury. It was a statement of an unauthorized fact "that the father would pay it," and such an argument has no place in a case of this sort, and should not be permitted, as this matter could not enter into the deliberation of the jury in determining the degree of guilt of the defendant. In other words:

"No such considerations should influence the jury in the exercise of a discretion the law reposes in them as to the degree and extent of the punishment." Grimes v. State, 105 Ala. 86, 17 South. 184.

[11-13] Several charges were refused to the defendant, but the defendant admits in his brief that there was no error in the refusal of any of the charges except charges 29 and 30. In the first place, we think the substance of both of these charges is fairly and substantially covered by the oral charge of the court and by the given written charges. In the second place, these charges are not predi-

cated upon the evidence. Moreover, both of the charges are based on parts of the evidence, and charge 30 is abstract and misleading. It may also be said as to charge 29 that it attempts to justify the defendant in the appearance of conditions to him, and not the appearance of conditions to a reasonable person, and the defendant might not be a reasonable person. The defendant must be in position of danger, either real or reasonably apparent, and it is not sufficient to say that it is apparent to the defendant himself, as that might not be reasonably apparent.

[14] Charge 30 is also defective in that it seeks to charge the jury that they should look into the question as to whether Gilley was looking for the defendant, and, if so, the jury was authorized to draw all such reasonable inferences as it might consider proper, and if, from the consideration of such facts and circumstances and inferences, the jury had a reasonable doubt, that they should find the defendant not guilty. This charge was misleading in that, if Gilley and Jarman were really looking for the defendant, they may have been doing so from no improper motive.

[15] This, we think, disposes of every question presented by the record except the overruling of defendant's motion to set aside the verdict and grant him a new trial. This motion sets up that the verdict is not supported by the evidence; that the evidence did not warrant the verdict or finding that the act of the defendant was malicious; that the verdict was against the weight of the evidence, and contrary to the charge of the court; that the court erred in refusing certain written charges; that the finding of the jury was not in conformity with the issue and evidence; and that, if the defendant was guilty of any crime or offense, it was only of an assault and battery. The court did not err in overruling this motion. There was a conflict in the evidence, and there was ample evidence to justify the jury in reaching the verdict which was rendered, and the verdict was in harmony with the charge of the court; and no error was committed in refusing any of the written charges as above indicated.

For the errors pointed out the judgment of the lower court must be reversed, and the cause remanded.

Reversed and remanded.