# Phillips *v.* The State.

*Assault with Intent to Murder.*

(Decided May 24, 1909. 49 South. 794.)

1. *Trial; Objection to Testimony; Time.*—Where it does not appear that there was not opportunity to object before the question was answered an objection not interposed to the questions came too late after the questions had been answered.

2. *Homicide; Assault With Intent; Evidence.*—The mechanism of the assault, and the fierceness of the attack if within the res gestae of the transaction, and the nature and extent of the wound inflicted are admissible as affording reasonable inferences as to such matter, and as shedding light on the intent of the defendant. For like reasons, evidence that shortly after the shooting there was blood on the ground and blood and particles of flesh spattered upon the fence and shot marks on the gate post, within three or four feet of the assaulted person when shot, was admissible.

3. *Same.*—It is not permissable, in a case of assault with intent to murder to show by the attending physician that he had taken the assaulted person to another city for treatment; such testimony tending to excite sympathy and likely to be over estimated to the prejudice of the defendant.

4. *Same.*—The fact that the defendant had settled an account with F. since the shooting was properly excluded, since that fact did not tend to show the state of defendant's mind previous to the shooting.

5. *Witnesses; Cross Examination; Accused.*—Good practice requires that a witness should be asked the state of his feelings in order to show bias before inquiring into the matters causing such feelings; but where it appears that the difficulty had its origin in a difference between the defendant and a son-in-law of the assaulted person, and that they were farming on shares, and that it

[Phillips v. The State.]

arose over the ownership of cotton raised by them, and the account betwen them and that the cotton was stored in the lot of the son-in-law at which point the shooting occurred, it was permissible for the state to ask the accused on cross examination how much he owed the son-in-law for advances to make the crop, as tending to shed light on his feelings.

6. *Charges of Court; Applicability to Case.*—Where the tendencies of the evidence supported the state's theory that the defendant had gone to the place of the shooting armed with a gun for the purpose of removing certain cotton about the title of which there was a dispute between defendant and the son-in-law of the person assaulted, and that the defendant intended to take it away at any event and was opposed by the person assaulted, a charge asserting that a man has a right to arm himself for his own protection, though abstractly correct, was properly refused as inapplicable. For like reasons, charges asserting that if the defendant and the son-in-law were tenants in common of the crop, accused had a right to move the cotton, and that accused had such an interest in the cotton, that he had a right to move it as against an outsider, and that if accused was attempting to move his own cotton, or if he had an interest in it at the time of the shooting, and the person assaulted had no interest in it, accused had a right to move it, were properly refused.

7. *Same.*—Where there was no evidence that the lot was either the defendant's place of business or within the curtilage of his dwelling, charges asserting his right to go there, or that he was under no duty to retreat from the place, were abstract.

8. *Same; Reasonable Doubt.*—Charge asserting that good character taken together with the other evidence in the case is sufficient to generate a reasonable doubt, and that proof of good character may generate a reasonable doubt of guilt are properly refused as requiring an acquittal on proof of good character.

9. *Same; Ignoring Evidence.*—Charges framed upon the idea that the accused had a right to go into a certain lot for the purpose of enforcing his claim to the cotton stored there, or that he was under no duty to retreat because the lot was either his place of business or within the curtilage of his dwelling, are properly refused, where his right to go into the lot depended upon the manner of its exercise which phaze of the evidence the charges ignored.

APPEAL from Monroe Circuit Court.

Heard before Hon. JOHN T. LACKLAND.

George Phillips was convicted of assault with intent to murder, and appeals. Reversed and remanded.

The following charges were refused to the defendant: "(1) Good character of the defendant, taken together with the other evidence in the case, is sufficient to gen-erate a reasonable doubt. (2) I charge you that George Phillips had a legal right to be in said lot. (3) If you

believe from all the evidence that the defendant and Ed Faircloth were farming on shares. and that Mrs. Faircloth ratified the contract existing between them, and that George Phillips was using the lot under the terms of the said contract, I charge that in that event the defendant was under no duty to retreat. (4) The court charges the jury that, if they believe that George Phillips and Ed Faircloth were tenants in common, George Phillips then had a right to move the cotton. (5) The court charges the jury that George Phillips had such an interest in the cotton that he had a right to move same as against an outsider." "(9) The court charges the jury that if they believe from the evidence beyond all reasonable doubt that the cotton the defendant was attempting to move was his own, or that he had an interest in the same at the time the shooting took place, and that the party shot had no interest in said cotton, the defendant had a right to move said cotton. (10) A man has a right to arm himself for his protection. (1) I charge you that, if you believe from the evidence that the defendant by contract with Ed Faircloth and Mrs. Faircloth had the right to use that lot for that year, then the defendant had a right to be there. (12) If you believe from the evidence that the defendant and Ed Faircloth entered into a contract whereby Faircloth furnished the land and the mules, and the defendant was to do the work, and they were to divide the crops grown on the land, and that Mrs. Faircloth ratified that contract, the parties to the contract were tenants in common or copartners. (13) Proof of good character may generate a reasonable doubt of the defendant's guilt." "(15.) I charge that, if defendant was at his home or dwelling house at the time of a difficulty, the law does not require him to retreat to avoid it." "(17) I charge you, gentlemen of the jury, that if George Phillips, by con-

tract with Mrs. Faircloth and Ed Faircloth, had a right to go in said lot during the year, then he had a right to go there at the time he shot Melton. (13) I charge you, gentlemen of the jury, that under the evidence the law did not require George Phillips to retreat. (19) I charge that when one is to furnish the land, mules, and fertilizer, and the other to perform the labor, for the purpose of making a crop, and they agree to divide the crop grown on the land, they are tenants in common. (20) If you find from the evidence that the lot was a part of curtilage of defendant's house and home, then the law imposes no duty on him to retreat to avoid a difficulty. (21) I charge you that, if that lot was the defendant's place of business the law does not require him to retreat to avoid a difficulty."

HYBART & BURNS, for appellant.—No brief came to the Reporter.

ALEXANDER M. GARBER, Attorney-General for the State.

SAYRE, J.—Defendant was convicted of assault upon one Melton with the intent to murder him. The surgeon who attended upon Melton after his injury testified to the nature and extent of his wound and to the course of the treatment for it. The bill of exceptions recites that the defendant objected to parts of this testimony; but as to a number of the objections it is clearly inferable that they were not interposed to the questions which elicited the testimony in advance of the answers, nor does it appear that defendant had not abundant opportunity to object before the questions were answered. These objections, if meritorious, came too late. This will serve to dispose of several of the exceptions noted in the record.

Over well-timed objections this witness was allowed to testify that it took the wound six months to heal; that it left Melton without the soft part of the nose, upper lip, righ part of the jaw, palate, and part of the temple bone; that he could not talk distinctly, and could not eat anything solid; that his head had to be thrown back and food injected into his mouth. The grounds of objection were that the evidence was irrelevant, immaterial, and calculated to arouse the prejudices of the jury. The testimony as to the nature and extent of the wound was admissible to show the intent of the accused. It afforded reasonable inferences as to the mechanism of the assault, the fierceness of the attack, and these things were of the res gestæ of the offense charged.—21 Cyc. 897, 945. For like reason the testimony of several witnesses to the effect, to state it generally, that shortly after the shooting they saw blood on the ground, and blood and particles of flesh spattered upon the fence, and shot marks on the gatepost within three or four feet of which Melton was at the moment of the shooting, was properly admitted.

Over similar and well-timed objections the court allowed the surgeon to testify that he had taken Melton to Atlanta, Ga., for treatment. The fact here testified to had no tendency to prove any circumstance of the shooting. The character of Melton's wound was a relevant fact, and perfectly well demonstrated by undisputed testimony. Possibly the conduct of the surgeon in taking him to Atlanta afforded some ground for the inference that he considered the wound so serious as to require treatment in Atlanta. But as evidence it stood upon no better footing than would a verbal declaration, made at the same point of time and to the same effect. If the declaration by conduct tended in any degree to show the character of Melton's wound, it was speculative and remote. It does not appear that

in the circumstances under which it was made there was any guaranty of trustworthiness, or any element of spontaneity. It did not spring naturally and immediately from the infliction of the wound. On the other hand, it had a tendency to excite sympathy for Melton and prejudice against the defendant, and was likely to be misused and overestimated by the jury. The ruling was reversible error.

On the cross-examination of the defendant the state asked him: "How much did you owe Ed. Faircloth for advances to make the crop during the year?" After an objection had been overruled, the defendant answered: "Seventy-six dollars." In rebuttal, defendant was asked: "Have you not since the shooting settled with Faircloth?" The state's objection was sustained. The difficulty between defendant and Melton appears to have had its origin in an altercation between defendant and Faircloth—who was Melton's son-in-law, and had been farming on shares with defendant—about the ownership of cotton raised by them and the state of the account between them. Melton had taken some part in the controversy. It was permissible for the state to ask the question on cross-examination for the purpose of showing bad feeling; but good practice required that the witness be first asked the state of his feeling for Melton. The defendant's question in rebuttal was properly overruled. His settlement of the account subsequent to the shooting could have no tendency to show the state of his mind previously thereto. The questions asked by the state of Mrs. Faircloth and Mrs. Melton tended to draw out the fact that defendant, at an earlier hour of the day, had gone to Faircloth's house and engaged in an altercation with Melton, and so to show malice.

The shooting occurred in Faircloth's lot adjacent to his dwelling. Cotton grown by defendant and Faircloth

[Phillips v. The State.]

on shares during the year was stored in a crib in the lot. Mrs. Faircloth owned the land, upon which the cotton had been grown. As already noted, there had been an angry dispute about the ownership of the cotton, and the state's case, supported by the tendencies of the evidence was that defendant had gone to the lot, armed with a shotgun, to take away the cotton, and to take it in any event. Faircloth was absent, and Melton was there looking after the interests of his daughter and son-in-law. The defendant requested a number of charges, which were refused by the court. The charge which asserted that "a man has a right to arm himself for his protection" was abstractly correct; but it was misleading, because, in its application to the case on trial, it ignored that phase of the evidence which tended to show that defendant had armed himself for the purpose of taking the cotton in dispute in any event. His rights in the cotton were in dispute, and, whatever they were, he was not to be justified in asserting, or preparing to assert, them by an assault greatly dangerous to life or limb. This consideration disposes also of charges 4, 5, and 9.

Charges 1 and 13 were properly refused, for that the one required an acquittal on proof of good character, and the other authorized an acquittal on consideration of the evidence going to show good character alone.

Charges 2, 3, 11, 15, 18, 20, 21, and 23 were framed upon the idea that defendant had a right to go into the lot to enforce his claim to the cotton, or that he was under no duty to retreat because the lot was either his place of business or within the curtilage of his dwelling house. His right to go into the lot depended upon the manner of its exercise, and the state's evidence as to that is neglected. As for the rest, there was no evidence that the lot was either defendant's place of business, or within the curtilage of his dwelling house, and

[Hill v. The State.]

so the charges relieving the defendant of the duty to retreat on that account were abstract.

Other charges assert that defendant and Faircloth were tenants in common of the cotton, while still others assert that they were not. Whether one status or the other existed, defendant had no right to assert his claim in the manner shown by the state's evidence, and this the charges ignored.

For the error pointed out, the judgment must be reversed, and the cause remanded.

Reversed and remanded.

DOWDELL, C. J., and ANDERSON and MAYFIELD, JJ., concur.