# Gambrell et al. v. Commonwealth.

April 19, 1940.

James M. Gilbert, Judge.

Wilson & Wilson for appellants.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Reversing.

The appellants, Tommy Gambrell and Lee Gambrell, were convicted of the malicious wounding of Charlie Jones. From a judgment sentencing each of them to the penitentiary for a term of 10 years this appeal is prosecuted.

On a Saturday morning in February, 1939, Jones and Lee Gambrell met up with each other about 9 o'clock and spent a larger portion of the day together and did considerable drinking. About 4:30 P. M. Jones and Lee Gambrell met Tommy Gambrell who got in an automobile with them, and the three of them started on their way to get Eli Gambrell, a brother of Tommy, who lived on Straight Creek. They passed through Pineville about 5 P. M. and a short piece out of Pineville had a minor collision with another car on a railroad crossing. After this collision the three got back into the car, Lee Gambrell driving, Jones in the center and Tommy Gambrell on the right, all on the same seat. Tommy Gambrell had a 45 automatic pistol, which Jones says he was carrying in his hands with his hands between his legs. There were two other pistols in the car, apparently lying on the seat. One of these pistols belonged to Lee Gambrell, who states that he borrowed the other pistol for Jones at Jones' request, this not being denied by Jones. Tommy Gambrell testified that he was a rural mail carrier and got his pistol at the post office a short while before getting into the car and that he was in the habit of carrying this pistol by reason of his occupation. He denies having the pistol in his hands and says that it was lying on the seat.

After proceeding about a mile from the point of the collision on the railroad crossing the car started down a hill and Jones' version of what occurred is as follows:

"We were pulling in on that hill and Lee put the car in low gear to stop, he didn't have any brake on it, and in about three or four days after that I woke up down here in the hospital with a bandage on my head."

Appellants' version is that in going down the hill, in the attempt to avoid a collision with two other cars on the hill, Lee Gambrell did throw the car in low gear to

stop but that it ran on to the bottom of the hill and ran into a culvert, throwing all three from the car and that Jones was evidently shot by the accidental discharge of the 45 pistol at the time of the collision although neither of appellants knew that he was shot until the following Monday. Two women testified that they heard a shot on the hill, at the bottom of which the wreck occurred, on the night in controversy but that in their judgment the shot was fired about 200 yards from where the car was wrecked. They knew nothing about the wreck until the next morning and of course, did not know whether or not the shot was fired in the car. They also admitted that shots were frequently fired in that vicinity. The first man at the wreck found Lee Gambrell sitting on the ground with Jones' head in his lap and Tommy Gambrell sitting in the ditch. Appellants told this man that Jones had been hurt in the wreck and turned over to him the three pistols. The 45 had been fired and a shell was hung in the ejector. Two cartridges in one of the other pistols had plunger marks on them but had not been fired. An ambulance was called and both appellants accompanied Jones in the ambulance to the hospital in Pineville and then left the hospital and went to the home of Jones' father and brought him to the hospital. An X-ray picture disclosed that Jones had a 45 caliber bullet in his head and both appellants were arrested later that night. A deputy sheriff, to whom the pistols had been turned over, testified that he asked Tommy Gambrell if he knew anything about the 45 automatic pistol which he showed him and that he said he did not. In explanation of this Tommy Gambrell stated that he told the sheriff the pistol did not belong to him but belonged to his brother. Both appellants are most positive that they did not know that Jones had been shot until Monday following their arrest and, while they are positive that he must have been shot by the accidental discharge of the pistol at the time of the wreck, they state that they did not hear the shot when the wreck occurred.

Jones testified that about three or four months before the time in controversy he and the appellants had a slight altercation at a United Mine Workers Meeting but admitted that they had made up since that time and he had been running with Lee Gambrell. He states that no cross word or argument of any kind occurred be-

tween him and the appellants during all the time they were together preceding the wreck. There is an utter absence of any evidence disclosing any motive, reason or desire on the part of appellants to shoot Jones.

It is contended first that the evidence was insufficient to sustain the verdict and we have no doubt that this is true as far as Lee Gambrell is concerned. The only effect of the Commonwealth's evidence was to show that he was present, driving the car at the time Jones was shot by the discharge of Tommy Gambrell's pistol. Mere presence is not enough to constitute one an aider or abettor in the commission of a crime. Hall v. Commonwealth, 219 Ky. 446, 293 S. W. 961; Watkins et al. v. Commonwealth, 227 Ky. 100, 12 S. W. (2d) 329. There was no evidence whatever connecting Lee Gambrell with the shooting of Jones and the trial court should have directed a verdict in his behalf. It is extremely doubtful that there was any substantial evidence that Tommy Gambrell willfully shot Jones, but as the judgment is to be reversed for another reason and as the evidence on the next trial may not be the same we refrain from passing on this question and expressly reserve it.

The trial court instructed on malicious wounding and on the misdemeanor of shooting and wounding in sudden affray or in sudden heat and passion. The latter instruction should not have been given as there was no evidence whatever on which to base it. This would not be sufficient ground for reversal as the conviction was not under this instruction but on the next trial it should not be given. In lieu thereof an instruction should be given on shooting and wounding as a result of wanton, reckless or grossly careless handling of the pistol by Tommy Gambrell. Balee v. Commonwealth, 153 Ky. 558, 156 S. W. 147.

By the fifth instruction the jury were told to acquit the appellants if they believed that the shot which wounded Jones was accidentally and unintentionally fired and that the act of firing was not willfull and malicious *or not the result of the defendant's reckless and careless use of the pistol.* The effect of this instruction was that the jury could not acquit if Jones was wounded as a result of reckless and careless use of the pistol yet no instruction was given on reckless and careless use

of the pistol fixing a penalty therefor. Under this instruction the jury was by inference authorized to convict the appellants if the wounding of Jones was the result of reckless and careless use of the pistol, a common law offense punishable by fine and imprisonment, yet they were necessarily relegated to the first instruction for the penalty, which was a penalty for the felony of malicious wounding. This instruction will be proper on the next trial when the instruction on shooting in sudden affray or in sudden heat and passion is omitted and the instruction on wounding as a result of reckless and careless use of the pistol is subtsituted therefor.

It is contended by appellants that the court erroneously permitted a physician to testify as to the future effect the wound received by Jones would have on him. We see no merit in this contention. It is competent for the Commonwealth to prove the nature and extent of an injury because it is proper for the jury to consider this in fixing the amount of the punishment. Williams v. Commonwealth, 102 Ky. 381, 43 S. W. 455, 19 Ky. Law Rep. 1427. The same reason is applicable to the testimony showing the future disabling effects of a wound.

Complaint is also made that the two women who testified to hearing a shot on the hill on the night in controversy were permitted to testify that the Gambrell car had traveled from the point where they claimed that the shot was fired to the point of the wreck despite the fact that they did not see or hear the car and did not know of the wreck until the next morning. This testimony was improperly admitted. The practical effect of it was to permit these witnesses to express the opinion that the shot they heard was fired in appellants' automobile. On the next trial these witnesses should not be permitted to testify concerning any movement by the car.

The judgment is reversed with directions to grant appellants a new trial and for further proceedings not inconsistent with this opinion.