## Patton v. Commonwealth.

March 10, 1942.

S. S. Willis and Moss Noble for appellant.

Hubert Meredith, Attorney General, and Jesse K. Lewis, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER—Reversing.

The indictment returned by a grand jury of Bourbon county charged the appellant and his brother, Troy Patton, with murder in 3 counts. The first charged the defendants jointly with shooting and mortally wounding Clifton Arnsparger; the second charged that Troy Patton fired the fatal shot and that Dennis Patton maliciously aided and abetted him in so doing; the third charged them with entering into a conspiracy in pursuance of which they armed themselves, broke into a storehouse, stole property therefrom, and, in attempting to escape arrest, shot and killed Clifton Arnsparger.

Separate trials were granted. The commonwealth elected first to try Troy Patton, who was convicted and sentenced to death in the electric chair. On appeal the judgment was reversed and the case remanded for a new trial in an opinion rendered by this court, February 24, 1942, styled Troy Patton v. Commonwealth of Kentucky, 289 Ky. 627, 159 S. W. (2d) 1006. That the court erred in failing to sustain appellant's application for a change of venue was one of the grounds upon which reversal was directed in that case. The same error is assigned in this case and since the motions of both defendants were tried at the same time on the same evidence, our decision in

that case is binding on this appeal. Further elaboration on this point is unnecessary because the reasons for our decision are fully set forth in the opinion above referred to. We feel constrained to say, however, that our decision that the defendants could not obtain a fair trial in Bourbon county has been confirmed by a careful perusal and consideration of the record on this appeal, which was not before us when the former decision was made. This record reveals, as will hereinafter be disclosed, that the appellant was found guilty of manslaughter and sentenced to 21 years in the state reformatory, although there was not even a scintilla of evidence of his guilt. Since we have arrived at that conclusion, we will confine our remarks solely to the complaint that the court erred in overruling appellant's, Dennis Patton's, motion for a peremptory instruction.

On the night of December 4, 1940, at about 10:20 o'clock George Toohey, Jr., and Clarence White drove to the residence of George Toohey, Sr., about 3½ miles from Paris. As they approached the house, they noticed the garage doors were open and observed an automobile parked at a distance of approximately 20 feet from the gate. It was a "faded blue" or "green" Oldsmobile carrying a Fayette county license tag, the first letter and two numerals of which were M26. According to the testimony of Clarence White, all the doors of the car were closed when they first passed the car, but, when they returned, the door to the driver's seat was about 6 inches ajar. Both testified they saw a man, whom they could not identify, run out of the garage, get into the parked car, and drive away. No other person was seen about the premises. The boys awakened Mr. Toohey, Sr., who joined them in an inspection of the garage where they found Mr. Toohey's automobile jacked up with both rear wheels missing. The elder Toohey, by telephone, informed deputy sheriff Clifton Arnsparger of the crime that had been committed against the property, and arranged to meet him in Lexington. Arnsparger and Toohey notified the Lexington and Fayette county officers of the crime, then proceeded toward Paris in an endeavor to locate the criminal. On their way to Paris, a few minutes before 12 o'clock, they encountered an automobile answering the description given by the younger men and which was occupied by Troy Patton, the owner and driver, and Dennis Patton, the passenger. They inquired of the occupants of the car the way to Lexington.

and pretended to drive in that direction, but, instead, turned and followed the other car. This is the first evidence of Dennis Patton's connection with the series of events of the evening. Because of a passing train, the Patton car was required to stop at a railroad crossing at 10th street in Paris. The officer parked his car behind the Pattons, whereupon he and Toohey alighted from opposite sides and walked toward the Patton car: Toohey going to the right thereof, Arnsparger to the left. The officer's coat was open and his badge in full view. He covered the Pattons with his pistol and attempted to open the left front door of their car, but it was locked. He then proceeded to walk around the car, during which interval the Pattons, Dennis first, then Troy, alighted from the right hand side of their car. Dennis, who was not armed, got out of the car with his hands in the air and walked to the side of a building where he remained with his hands elevated during the happening of the events immediately following. As soon as Troy stepped out of the car, he commenced shooting at Arnsparger, who returned the fire. After mortally wounding Arnsparger, Troy shot and slightly wounded Toohey and immediately thereafter fled from the scene. After firing had ceased and Troy had escaped, Dennis remained standing against the building with his hands in the air, then without protest, obeyed Toohey's command to sit on the sidewalk, although Toohey had no weapon to enforce his order. Toohey and Arnsparger reloaded the latter's pistol and leaving Arnsparger to guard Dennis, Toohey proceeded to the railroad depot to summon aid. The ticket agent, after notifying the police department, joined Toohey on his return to the scene of the shooting. Upon arrival, the police officers took custody of Dennis and transmitted him to the police station, where he told them where they likely would, and on the following day did, find his brother, viz: at the residence of a relative in Magoffin county. A search of the rear compartment, which was locked, of the Patton car revealed the wheels and tires owned by Mr. Toohey, and, in the place from which the rear seat cushion had been removed, the officers found a loaded rifle. The foregoing is a detailed resume of the commonwealth's evidence of the events leading up to and consummating the crime charged in the indictment; and, upon proof of which, the jury found appellant to be guilty of manslaughter. The defendant offered no evidence.

The attorney general and his assistants concede that on the authority of the opinion heretofore rendered and referred to above, the judgment on this appeal must be reversed; but apparently do not consider appellant's contention that the court erred in refusing to sustain the motion for a peremptory instruction to be of sufficient importance to merit discussion.

To constitute one guilty of aiding and abetting in the commission of a crime it is essential that evidence be introduced to show a plan or concert of action in its commission, or to show that the accused by overt act or pronouncement, has encouraged, assisted, or procured the principal to commit the unlawful act. One's mere presence at the scene of the murder is not sufficient proof of an unlawful act to submit that issue to a jury. English v. Commonwealth, 240 Ky. 446, 42 S. W. (2d) 706; Stacy v. Commonwealth, 221 Ky. 258, 298 S. W. 696; Combs v. Commonwealth, 224 Ky. 653, 6 S. W. (2d) 1082; Gambrell v. Commonwealth, 282 Ky. 620, 139 S. W. (2d) 454. The evidence in respect to Dennis Patton aiding or abetting Troy Patton in what would seem to be a wanton and murderous attack upon Clifton Arnsparger falls far short of the elements necessary to constitute aiding and abetting as correctly outlined in the above cited cases. He was merely present when Troy committed the crime. The commonwealth utterly failed to produce any evidence of a plan or concert of action on his part or any overt act or pronouncement by him encouraging, assisting, or procuring the crime to be committed; on the contrary, its evidence showed that he actually refused to participate in the affray, even though he might have had reason to believe his brother was in danger of losing his life. Dennis was unarmed; he alighted from the car with his hands in the air and remained in that position throughout the entire affray; in fact, his every act connotes his innocence. That his mind seemed free of guilty knowledge of any wrongdoing is strongly shown by his failure to flee or attempt to escape, although, under the circumstances, it would have been an easy matter for him to have done so. It is apparent, therefore, that the trial court rightfully refused to instruct the jury on the second count of the indictment, viz: that Dennis Patton aided or abetted his brother in the commission of the crime.

Like reasoning precludes the submission of the case

upon the theory that Dennis joined his brother in shooting and mortally wounding Arnsparger, as charged in the first count of the indictment. If it is reasonable to infer, which we do not concede, that the mere presence of a loaded gun in the back end of the automobile in which Dennis Patton was riding, and which was under the control and custody of his brother, was sufficient evidence from which to infer that Dennis had the gun in his possession for the purpose of committing an unlawful act, the fact that he did not use the gun for that purpose is conclusive of the ultimate fact that he was not guilty of actually participating in the shooting. It was conclusively shown that the rifle was out of his reach at the time the shooting began and he had no other weapon available for the purpose.

There remains for our consideration the evidence offered by the commonwealth in support of the conspiracy charged in the third count of the indictment. As heretofore pointed out the brief for the commonwealth does not point to the evidence upon which it relies to support this charge. The only part of the record indicating its contention is the opening statement of counsel for the commonwealth on the trial. It was stated that the commonwealth would show that Dennis Patton and Troy Patton were present at the commission of the crime of breaking into the garage and stealing property therefrom, and that together they fled the scene, were endeavoring to avoid arrest, and, in doing so, shot and fatally wounded the deputy sheriff who was attempting to arrest them as perpetrators of the first crime. It is true that the car in which Dennis Patton was riding was conclusively identified as the car parked near the Toohey gate, and the additional fact that the stolen property was contained therein was conclusive proof that its occupant, at 10:20 o'clock P. M. almost 2 hours before the murder, was the perpetrator of the crime staged in Mr. Toohey's garage; but the evidence fails to show that there was more than one man participating in that crime, and, if any value should be given to the testimony that the door of the car was closed when first observed at the scene of the robbery and open 6 inches when next seen, such evidence would provide no more than a suspicion that a second person was present at the scene of the earlier crime. Certainly it was not a fact from the proof of which it could possibly be inferred that Dennis Patton was the individual present at the time and place. The

fact that the car was later found under the control and in the custody of Troy Patton was the establishment of a fact from which it might reasonably be inferred that Troy was present and the perpetrator of the first crime, but the presence of Dennis Patton in the machine and with the person having custody of the machine, assuming the latter to have been at least one of the perpetrators of the earlier crime, was not sufficient to infer that Dennis participated therein in the absence of proof that two men were at the scene of the crime. Mere relationship to the perpetrator of the crime and association with him after the crime has been consummated are not facts sufficient to raise more than a suspicion that he participated in the commission of the crime. Had Dennis committed some act at the scene of the murder or when first accosted by Messrs. Arnsparger and Toohey, which would indicate guilty knowledge on his part that a crime had been committed, the contention of the commonwealth would be somewhat strengthened; but this record fails to disclose any fact in proof of the contention that Dennis Patton was with his brother until the lapse of approximately one and a half hours after the commission of the larceny. No evidence was introduced from which a finding could be made that appellant knew a larceny had been committed or that he knew his brother intended to commit larceny or any other crime. It follows that there was no substance in the testimony to form a basis for a finding that appellant had conspired with his brother to break into the garage, commit a larceny, or to escape arrest.

The presumption of innocence attends every person accused of crime and may not be overcome by mere suspicion and proof of suspicious circumstances; and, while it is true that a conspiracy may be adduced from circumstantial evidence, nevertheless, the circumstances must be of such nature and character as to exclude every reasonable hypothesis of innocence of the accused. Arvin v. Commonwealth, 241 Ky. 127, 43 S. W. (2d) 516; Baird v. Commonwealth, 241 Ky. 795, 45 S. W. (2d) 466. Mere relationship between the parties accused of the crime, or mere association together either before or after the commission of the crime, is not sufficient proof of a conspiracy to submit that issue to the jury. Pharris v. Commonwealth, 198 Ky. 51, 248 S. W. 230. The circumstances proven in this case do not exclude every reasonable hypothesis of innocence of the appellant. Failure

to see more than one man at the scene of the crime against the Toohey property confirms the hypothesis that appellant was not there. If the door was opened by a second person at the scene of the crime, such circumstance does not exclude the hypothesis that appellant was not the second man. The fact that the stolen property was found in Troy Patton's car does not exclude the hypothesis that appellant was unaware of such fact when we recall that it was locked in the rear compartment and concealed from his view. Appellant's presence in his brother's automobile one and one half hours after the latter committed a crime might give rise to a contrary suspicion but does not exclude the hypothesis that the former was there for a lawful purpose. Nothing is more natural or reasonable than for one lawfully to be the guest of his brother in an automobile. Appellant's conduct when the way to Lexington was inquired was such as not even to give rise to suspicion that he was guilty of the offense which had been committed earlier in the night. Mere presence of the loaded rifle in his brother's car does not exclude the hypothesis that the rifle was never in appellant's possession or that he was not aware of its presence in the back seat of the car. Finally, his conduct immediately before, during, and after the homicide is totally inconsistent with any hypothesis of guilt, and must be accorded great weight in a determination of whether the commonwealth has met the burden of overcoming the presumption of innocence of the accused by introducing evidence of his guilt. We therefore conclude that the evidence was not sufficient to submit the issue of appellant's guilt to the jury on either of the 3 counts in the indictment and that the court erred in refusing to sustain appellant's motion for a peremptory instruction.

Wherefore the judgment is reversed with directions to grant appellant a new trial. If the evidence on the second trial is substantially that as shown by the record of the first trial, the presiding judge will direct the jury to return a verdict of not guilty.