### SMIDDY v. COMMONWEALTH.

Court of Appeals of Kentucky.
June 12, 1951.

Joe S. Feather, R. L. Brown, Williamsburg, for appellant.

A. E. Funk, Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., for appellee.

CAMMACK, Chief Justice.

J. B. Smiddy was sentenced to four years in prison on a charge of malicious striking and wounding with a deadly weapon with intent to kill. One of the grounds upon which he urges reversal of the judgment is that there was insufficient evidence to warrant the submission of the case to the jury on the charge for which he was found guilty. Since we think this contention is well grounded, we shall confine our consideration of the case thereto.

The prosecuting witness was Pete Bray, a man 76 years of age and who had been serving as deputy sheriff of Whitley County for some 20 years. Smiddy did not take the stand, nor was any proof offered in his behalf. According to Mr. Bray's testimony, the appellant and his brother Robert and two or three others attracted his attention while they were scuffling around in the street. He approached the group and asked what they were doing and they said they were "just playing." He did not speak to Robert, but walked up to appellant and told him he had had too much to drink and that he had better go on home. The appellant told him that he was not going home and that he (Bray) was not going to take him in either. He and the appellant began scuffling and he pulled out his gun and hit Smiddy with it. The gun went off and the appellant came toward him again. When he drew back to hit Smiddy again the gun flew out of his hand and slid over toward where Robert was standing. Robert beat him to the gun and he turned back to the appellant and they began scuffling again and fell to the street. Robert then began hitting him in the back with the gun. As to what he and the appellant were doing at that time Mr. Bray said:

"Q50. Now. What was happening as between you and J. B. Smiddy at the time Robert Smiddy was striking you in the back and striking you in the head? A. We was fighting there, on the ground.

"Q51. Did he have hold of you? A. Yeah, I was hold of him.

"Q52. Was he hold of you? A. Yeah, trying to get up. We was scuffling.

"Q53. Could you get up while you were there fighting? A. Well, no, he couldn't hardly get up.

"Q54. I say, could you? While you were there on the ground? A. No, I didn't get up by myself while I was on the ground. They holp me up. * * *

"Q56. Tell the jury whether or not J. B. Smiddy had hold of you during all the time that Robert Smiddy was striking you with this pistol? A. Well, I suppose he was. We was locked up together, just hugged up together. I was hold of him and he was hold of me. * * *

"Q59. If I understand you, you were hold of each other all the time Robert Smiddy was striking you? A. Yes. After I ran back from getting hold of my gun, Bob beat me to it, then we clinched up there and was hold of one another until Bob went to beating me in the back."

■ The appellant and his brother were indicted jointly. Robert Smiddy left the State, so the appellant was tried alone. According to Mr. Bray's testimony, the appellant was drinking and refused to go home when he ordered him to do so. A scuffle followed during which Mr. Bray lost his gun and Robert Smiddy came in possession of it. There is no proof that the appellant ever asked his brother to come to his assistance, or that he did anything other than to resist an arrest. There were no words spoken between the appellant and Robert. Mr. Bray and the appellant were holding on to each other and were scuffling on the ground. All of the striking was done by Robert, apparently, for reasons of his own. The difficulty between Mr. Bray and the appellant started before Robert got the gun and continued thereafter. There is nothing to show that Robert's obtention of the gun had any bearing on or connection with the appellant's actions. Under the circumstances, we think it was improper to submit that question to the jury. The verdict shows that the appellant was found guilty under the instruction covering his aiding and abetting his brother Robert in the wrongful striking of Mr. Bray. The evidence did not warrant the giving of such an instruction. Patton v. Commonwealth, 289 Ky. 771, 160 S.W.2d 180.

For the reasons given we think the judgment should be and it is reversed, with directions to set it aside and for proceedings consistent with this opinion.