CATES, Presiding Judge.
Hudson, convicted of assault with intent to murder with a sentence of twenty years in the penitentiary, brings this appeal.
On the night of August 11, 1974, Hudson stopped Leon Vinson to ask for directions to get from North Court Street in Montgomery to Interstate Highway 85-North. Vinson told Hudson, who was accompanied by another man and a woman, to follow his car, that he was going that way.
After the two cars had gone some distance, Hudson blinked his lights and *589 honked his horn. Vinson stopped; Hudson walked up to his car, presented a gun and said, “Get out, this is a holdup.”
While Vinson stood beside his car with his hands in the air an off-duty Montgomery police officer, Charles Hamilton, drove up. Seeing Vinson’s plight, he stopped and told the trio, “This is the police.” One of the two men manoeuvered into the darkness in such a way that Hamilton got caught in the beams of his car’s headlights. Then the other man — Hudson—fired at him. The first shot (which went into his chest) knocked Hamilton to the ground. The second hit him in the leg.
Hamilton returned the shots and Hudson was hit in the hand.
In the course of Hamilton’s testimony we find:
“Q Were you taken to a hospital ?
“A No, sir. I went, but I wasn’t taken.
“Q How did you get to the hospital?
“MR. PAYNE: Your Honor, I object to that.
“THE COURT: Overruled.
“MR. PAYNE: The question of how he got to the hosptal is irrelevant. It is without the scope of the Indictment.
“THE COURT: Well, the charge is assault with intent to murder, and his condition has a lot to do with it. Go ahead.
“Q How did you get to the hospital, Charlie ?
“A I drove to the hospital.
“Q You drove yourself?
“A Yes, sir.
(R. 63)
and
“MR. PAYNE: Your Honor, the testimony that is coming out has no purpose other than for the purpose of inflaming the minds of the Jurors. That is exactly the purpose of this testimony and I object to it strenuously.
“THE COURT: Overruled. * * *”
(R. 64)
The detailed evidence of Hamilton was a recital of how he had gone to a gate of Gunter Air Force Base, inexplicably was denied help, and had to drive himself, with one lung filling with blood, to Jackson Hospital where he finally got medical attention.
I
On appeal counsel contends that the circuit court erroneously denied his motion for a change of venue because of newspaper and television publicity as to Officer Hamilton having been chosen Police Officer of the Year by the Montgomery Exchange Club in February, 1975.
Trial was had February 27, 1975, more than six months after Hamilton was shot. Under Mathis v. State, 52 Ala.App. 668, 296 So.2d 755; Mathis v. State, 52 Ala.App. 674, 296 So.2d 760 and Murphy v. Florida, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 we find no error. See Bloodworth, J., Mathis v. State, 292 Ala. 372, 296 So.2d 764.
II
We do not have the benefit of a brief from the State because the Attorney General has moved us to remand this cause-for determination of a Youthful Offender petition which was filed in the trial court, but not acted on according to the record certified to us by the circuit clerk. Since under T. 15, § 389 we perceive reversible error, the Youthful Offender matter can be taken up aliud examen.
III
Jury trials require screening of evidence by the trial judge. This screen *590 ing is confined to admissibility, not weight: the test being whether the inquiry seeks facts throwing light on the transaction. Nelms v. Steiner Bros., 113 Ala. 562, 22 So. 435 (Brickell, C. J.). Undue multiplication of issues is to be guarded against as tending to divert the minds of the jurors from the main issue. See Stone, J., in Mattison, 55 Ala. 224.
In a criminal case the rule of relevance is more strictly applied than it is in civil trials. Pressley v. State, 18 Ala.App. 40, 88 So. 291; Browning v. State, 31 Ala.App. 137, 13 So.2d 54; Wilbanks v. State, 42 Ala.App. 39, 151 So.2d 741.
The Alabama statutory crime of assault with intent to murder embraces the animus of the common law crime of murder, i. e., the killing of a rational (i. e., human) being with malice aforethought. Code 1940, T. 14, § 38. Simpson v. State, 59 Ala. 1; Johnson v. State, 42 Ala.App. 511, 169 So.2d 773. Thus, in assault with intent to murder, the State need not burden itself with proving all the mental elements of statutory first degree murder.
Judge Harwood has written:
“ * * * the facts to be looked to as important in determining this intent to take life, an essential element in the offense * * *, are the character of the assault, the use or lack of a deadly weapon, and the presence or absence of excusing or palliating circumstances, [citing cases].” — Bowen v. State, 32 Ala.App. 357, 359, 26 So.2d 205, 206
Thus, in Brown v. State, 142 Ala. 287, 38 So. 268, the duration of the confinement of the assaulted party was held material on intent (vel non) to kill.[1] Beck v. State, 240 Ala. 19, 197 So. 43.
In these cases the extent of the victim’s wound is an admissible enquiry because testimony thereabout may shed light on the severity of the alleged attack. Anno. 87 A.L.R.2d 926; Bryant v. State, 31 Ala.App. 355, 17 So.2d 427.
The testimony of Officer Hamilton as to his going to the gate of Gunter Air Force Base and having to drive himself to Jackson Hospital in nowise came within the scope of res gestae as shown in Stuart v. State, 244 Ala. 434, 14 So.2d 147, and Guntharp v. State, 54 Ala.App. 363, 308 So.2d 722.[2] Nor do we consider that this proof related to the infliction or gravity of the wound, other than to show remarkable stamina and will to live on the part of Officer Hamilton.
In this case we consider that the opinion in Phillips v. State, 161 Ala. 60, 49 So. 794 (per Sayre, J.) is controlling. We quote in part:
“Over similar and well-timed objections the court allowed the surgeon to *591 testify that he had taken Melton to Atlanta, Ga., for treatment. The fact here testified to had no tendency to prove any circumstance of the shooting. The character of Melton’s wound was a relevant fact, and perfectly well demonstrated by undisputed testimony. Possibly the conduct of the surgeon in taking him to Atlanta afforded some ground for the inference that he considered the wound so serious as to require treatment in Atlanta. But as evidence it stood upon no better footing than would a verbal declaration, made at the same point of time and to the same effect. If the declaration by conduct tended in any degree to show the character of Melton’s wound, it was speculative and remote. It does not appear that in the circumstances in which it was made there was any guaranty of trustworthiness, or any element of spontaneity. It did not spring naturally and immediately from the infliction of the wound. On the other hand, it had a tendency to excite sympathy for Melton and prejudice against the defendant, and was likely to be misused and overestimated by the jury. The ruling was reversible error.” (Italics added.) — 161 Ala. at 64, 65, 49 So. at 796
This testimony, with its Kafkaesque bureaucratic bumbling to frustrate binding the wounds of a man who had been set upon by thieves, could only have prejudiced the jury against the appellant as the prime cause of Hamilton’s misery. But it sheds no light on the issues framed by the plea of not guilty and the indictment.
IV
The court below allowed the appellant to file (for aught that appears in absentia) a written waiver of arraignment with a plea of not guilty and not guilty by reason of insanity. Such a plea waives all special pleas, e. g., misnomer, and other pleas in abatement. See Carlisle v. State, 22 Ala.App. 255, 114 So. 475; McGee, Ala.Crim.Practice, p. 123 et seq.; Ala.Dig., Crim.Law, ^279.
The general rule, in the absence of statute or rule, is that a defendant must personally plead to an indictment. Waiver is recognized where the strict Common Law order of proof is not insisted on by the trial court. See discussion in Brinks v. State, 44 Ala.App. 601, 217 So.2d 813, where appellant appeared in person and waived arraignment. Headley v. State, 51 Ala.App. 148, 283 So.2d 458, was based on personal appearance.
The waiver of personal appearance in court at arraignment without a corollary leave to file all preliminary pleas is reversible error.
The judgment below is reversed and the cause remanded for new trial.
Reversed and remanded.
All the Judges concur, except HARRIS, J., who concurs in the result.

. Brown v. State, supra, is, we think, erroneously cited in Anno. 87 A.L.R.2d 926 § 3(d) for the admissibility of the permanent effects of the wound. Spurting v. State, 29 Ala.App. 73, 191 So. 919, approved admissibility of a bullet being still in the victim’s body.
In Claypoole v. Commonwealth, (Ky.) 337 S.W.2d 30, 87 A.L.R.2d 923, the Court of Appeals seemingly overruled Gambrell v. Commonwealth, 282 Ky. 620, 139 S.W.2d 454. In Glaypoole reversible error was found in the doctor’s testifying, over objection, as to the victim’s future ability to walk and engage in manual labor. This ruling seems to comport with the more recent cases elsewhere. People v. Nickopopoulos, 25 Ill.2d 451, 185 N.E.2d 209; Fowler v. State, 171 Tex.Cr.R. 600, 352 S.W.2d 838; [overruled in part Levell v. State (Tex.Cr.App.) 453 S.W.2d 831 — robbery with firearms.]

. “The acts, conduct, and demeanor of the injured person at the time of, or shortly before or after, the offense are a part of the res gestae; but the rule is otherwise as to acts done some time before or after, and which bear no relation to, the offense.” 16 C.J.Criminal Law § 1120, p. 579.
“The acts and conduct or the condition of the injured person after the offense may be admissible as res gestae, but not if there is no immediate causal relation to the offense or if other essential requirements for res gestae are absent.” 22A O.J.S. Criminal Law § 671, p. 693.