# Long *v.* The State.

*Indictment for Arson.*

1. *Drawing names from jury-box, under local law in Mobile.*—Under the special statutes regulating the drawing of jurors in Mobile (Sess. Acts 1882-3, p. 501; 1884-5, p. 534; 1886-7, p. 201), it is made the duty of the judge of probate, when the City Court is in session, to bring the jury-box into court whenever ordered to do so; and the box being brought into court a second time, on the failure to complete the jury

[Long v. The State.]

from the sp?cial *venire* first ordered, and opened, in the presence of the court, with a key furnished by the solicitor, the probate judge being absent, and the key in his possession, there is no irregularity of which the defendant can complain.

2. *Excusing person disqualified as juror.*—In the exercise of its duty and discretionary power (Code, §§ 4325, 4335), the court may excuse from service a person drawn as a juror who cannot understand the English language sufficiently to qualify him to serve in that capacity.

3. *Competency of juror, as affected by opinion as to guilt or innocence of defendant.*—A person summoned as a juror, who, on his *voir dire*, states: "I know nothing about the case, but what I have read in the papers. At the present time, I have an opinion as to his guilt or innocence, to a certain extent, and I am afraid I would go into the jury-box with a biased opinion; but, after being sworn as a juror, I could lay that opinion aside, and find a verdict on the evidence alone, without reference to any opinion I now have," is not disqualified as a juror, under the statute (Code, § 4330).

4. *Competency of wife, as witness against husband.*—In a criminal case, the divorced wife of the defendant is competent to testify as a witness against him, as to matters which occurred after the divorce, but not as to matters which occured before.

5. *Relations existing between defendant and person injured, as showing motive.*—The relations existing between the defendant and the person injured by the offense charged, whether in person or property, may tend to disclose a motive for its commission, and aid in identifying him as the perpetrator; and the evidence is admissible for this purpose.

6. *Weight and credibility of confessions.*—When confessions are allowed to go to the jury as evidence, being shown to be voluntary, the jury can not reject them as incompetent, though they are not bound to accept them as conclusive; but the determination of their credibility is exclusively within the province of the jury, and a charge would invade their province, which instructed them to reject the confessions as wanting in credibility, if not made freely and voluntarily.

7. *Using accomplice as witness for prosecution, as ground for dismissing prosecution against him.*—When an accomplice is examined as a witness for the prosecution against another person, and fully discloses the guilt of his associates and himself, there is generally an implied promise that he shall not be prosecuted or punished for the offense; but he can not insist on the dismissal of the prosecution against himself, as matter of right, because he was examined as a witness against another person, who was tried for the same offense, no promise or inducement being held out to him at the time.

FROM the City Court of Mobile.

Tried before the Hon. O. J. SEMMES.

The defendant in this case, Ellis Long, was indicted for willfully setting fire to "a dwelling-house of Thomas Martin, in which there was at the time a human being;" was convicted, and sentenced to the penitentiary for the term of eighteen years. Before entering on the trial, the defendant moved to dismiss the prosecution, "on the ground that he was made a witness for the State in a prosecution before the mayor of Mobile against one John Wilson for this same offense, and subsequently on an application by said Wilson for *habeas corpus*, and was summoned and used by the

[Long v. The State.]

State on said investigation." In support of this motion, he offered to prove that, on April 24, 1888, John A. Sullivan, a detective officer of the city of Mobile, having in his hands a warrant for the defendant's arrest on this charge, and having already arrested said Wilson, "came to him, and told him to appear on the next day as a witness against said Wilson, on the hearing before the mayor; informing him at the time that he also had a warrant for his arrest, but would not arrest him at all, since he was going to use him as a witness for the State in the case against Wilson, and that he wanted defendant to tell him all about the burning of Martin's house; that he (defendant) agreed to do so, and thereupon went with said detective down to the guard-house, and there disclosed to said detective, under his said promises, in the presence and hearing of Gus Roulton, the clerk of the chief of police, all that he knew about the matter, concealing nothing, but showing up how he knew about it all, and what; that defendant was afterwards put on the stand as a witness against Wilson in the mayor's court, and used as a witness against him on that trial; that later on, also, in the *habeas corpus* proceedings by said Wilson, he was likewise used as a witness for the State; and that said Wilson, in these proceedings, was held under the same charge for arson under which defendant is now indicted and being tried." On objection by the State, the court "declined to hear or receive this evidence, and refused defendant's said motion to dismiss;" to which rulings defendant duly excepted.

On the trial, as the bill of exceptions further shows, said Martin testified to the burning of the house in which he lived, and in the front room of which he carried on "a little eating-house, where he served coffee and meals for coal boys;" and that Mrs. Baker, the divorced wife of the defendant, "carried on the same kind of business," said Wilson and the defendant boarding with her. The defendant objected to the evidence "about Mrs. Baker, Wilson and said Long living in that house, and carrying on the same kind of business that witness did;" and he excepted to the overruling of his objection. Mrs. Baker was also examined as a witness for the State, against the objection and exception of the defendant; her testimony relating to her removal to the house, and the kind of business she there carried on, subsequent to her divorce. The court also admitted as evidence, against the objections and exceptions of the defendant, his statements to Sullivan, the detective, to the effect

that he went with Wilson to Martin's house, the night of
the fire, and saw him set fire to it; and also his statements,
or confessions, the same in substance, to one Ben. Jackson,
which were made about the same time. In reference to
these confessions, the defendant requested the following
charge in writing: "(40.) If the jury, in view of all the
evidence, are not satisfied that the statements made by the
defendant to Jackson were made freely and voluntarily, they
should be rejected as wanting in credibility, or as not en-
titled to weight in determining the question of guilt or in-
nocence." The court refused this charge, and the defendant
excepted. Exceptions were also reserved to several other
rulings during the trial, which are noticed in the opinion.

JAMES COBBS, for the appellant.

THOS. N. MCCLELLAN, Attorney-General, *contra.*

CLOPTON, J.—1. The original *venire* having been ex-
hausted without completing the jury, the City Court di-
rected the judge of probate to bring into court what is
known as "the City Court jury-box", from which fifty names
were drawn as talesmen in open court. The jury still being
incomplete, the same proceeding was repeated, except that,
the key of the box not being obtainable, it was opened by a
key procured from the solicitor. Objection was taken to
this manner of drawing jurors, on the ground that, by the
act of February 16, 1885, it was the duty of the judge of
probate to deliver to the clerk of the court, when in session,
the jury-box and the key of the same, and that the clerk
should remain the custodian as long as the court should re-
main in session. By the amendatory act of February 24,
1887, this provision of the statute was repealed, and in lieu
of it was substituted a provision, which imposed on the
judge of the City Court the duty to direct the judge of pro-
bate to bring the jury-box into court, as often as may be
necessary during the term.—Acts 1884-85, 534; Acts 1886-
87, 201. Also, it is provided, by the "act to regulate the
mode of selecting, drawing and impanelling grand and pe-
tit jurors for the county of Mobile," that "the provisions in
relation to the selecting, drawing and summoning of jurors,
shall be construed as merely directory, so far as the validity
of the organization of the jury is concerned; and all juries
drawn in substantial compliance with the act, shall possess

[Long v. The State.]

the power to perform all duties belonging to such juries. The provisions of the act, so far as they impose duties upon any person or persons, or upon any judge or court, are mandatory.—Acts, 1882-83, 501. The drawing of the jurors was in substantial compliance with the provisions of the statute in force at the time of the trial.

2. The statute prescribing the causes for which a person, drawn and proposed as a juror, may be challenged, was not intended to take away from the court the discretionary power to excuse any person, who appears to the court to be unfit to serve on the jury. This power is essential to procure fit and competent persons to serve as jurors, and to secure a due and efficient administration of the law, but should be exercised consistently with the right of the accused to have a jury selected from the list served on him, as far as practicable—there must be sufficient cause. The power is conferred by express legislative enactment. Section 4335 of Code of 1886 provides: "The court may excuse from service any person summoned as a juror, if he is disqualified, or exempt, or for any other reasonable or proper cause, to be determined by the court." And by section 4325, it is made the imperative duty of the court, before administering the oath, to ascertain that the juror possesses the qualifications required by law. There is no error in excusing Manuel Bettancourt, who was drawn as a juror, it appearing that he could not understand the English language sufficiently to qualify him to serve as such.

In *Carson v. State*, 50 Ala. 134, the juror answered, that he believed the defendant to be guilty, from what he had heard, but, if the evidence should not be as he had heard, and should show the defendant to be innocent, his belief would not bias his verdict, and he would do what was right. It is said "the juror in this case answered substantially, if not categorically, that he had not a fixed opinion which would bias his verdict. . . . Under our statute, a belief or opinion does not disqualify. There must be a fixed opinion, which would bias the verdict. An opinion subject to be changed by the evidence, which would not affect the verdict, unless the evidence corresponded to the facts upon which the opinion was founded, does not disqualify. The juror declared himself competent, when he declared that, though he believed the defendant guilty on mere hearsay, yet, if the evidence showed him innocent, this belief would be dissi-

[Long v. The State.]

pated, would not bias his verdict, and he would do what was right."

In *Bales v. State*, 63 Ala. 30, the rule is declared as follows : "Opinions founded on the hypothesis of the truth of the facts which have been heard, and without the hearing of other facts, which may contradict them, or lessen their weight, is not the fixed opinion to which the statute refers." The meaning and extent of this construction of the statutory regulation will be better understood by comparing it with another part of the opinion in the same case, where it is said : "The disqualification at common law, and under the statute, is, that the person as a juror holds an opinion, as to the guilt or as to the innocence of the accused, disqualifying him from rendering a verdict in accordance with the evidence as it may be delivered by the witnesses, and the law as it may be pronounced by the court. The holding of such an *opinion*, such a *judgment* or *belief*, all authorities at common law concurred in pronouncing sufficient to compel his exclusion, whatever diversity of opinion there may have been as to the mode of ascertaining, or as to the facts which showed its existence."

In *Jackson v. State*, 77 Ala. 18, the juror answered, that he had a fixed opinion as to the guilt of the defendant, which would bias his verdict, if the facts proved were as he had heard them ; but, if the facts proved differed from what he had heard, he would not be biased, but would act on the facts as proved. After observing that the opinion which disqualified under the statute, must not only be fixed, but possess a fixedness which would bias the verdict, and that an opinion formed on rumor, subject to change on hearing the evidence and the law pronounced by the court, will not disqualify, it is said : "When, however, such previous opinion is so fixed, that it will bias the verdict on the rumored facts being proved, the juror is not free to impartially consider and weigh the evidence *pro* and *con*, or to make an unbiased application of the law, as pronounced by the court, to the facts, if proved as heard. A juror having such fixed opinion, is not the impartial juror guaranteed by the constitution."

While some of the expressions in the opinions may not be sufficiently limited or qualified for use as a general definition, the following may be deduced from the cases when compared with each other, as expressing the meaning of a fixed opinion which would bias the verdict. The mere formation of an opinion founded on rumor or hearsay, which is subject

[Long v. The State.]

to change on hearing the evidence, and leaves the mind of the juror free to impartially consider the whole evidence, without giving undue credence to that which tends to prove the facts as heard, and to apply to the evidence the law as pronounced by the court, is not sufficient to disqualify. But an opinion, whether founded on rumor, or conversations with witnesses, or on observation, which is a conviction, a prejudgment, disqualifying the juror to impartially consider the whole evidence—that which tends to prove the facts as heard, as well as that which contradicts or explains—and to apply free from bias the law as given in charge by the court, is a fixed opinion which will bias the verdict. The mind of the juror should be in such a state of freedom, that he is capable of giving to the accused the weight of the presumption of innocence, and the benefit of a reasonable doubt. The statute affirms, in concise, intelligible, and comprehensive language, the common-law rule, as declared by Chief-Justice Marshall on Burr's trial: "That light impressions, which may fairly be supposed to yield to the testimony that may be offered, which may leave the mind open to a fair consideration of that testimony, constitute no sufficient objection to a juror ; but those strong and deep impressions, which will close the mind against the testimony that may be offered in opposition to them, which will combat that testimony and resist its force, do constitute a sufficient objection to him."

The sufficiency of the cause of challenge is determined by the trial court, and the inquiries are addressed to the conscience of the juror under oath. He is examined touching his qualifications, in the presence of the judge, who sees his manner of answering the questions, and the probing of his conscience, which is often times more clearly indicative of his disinterestedness or bias, than the mere words used. The reviewing court, therefore, should exercise caution, and the finding of the trial court should not be set aside, unless it affirmatively appears, that, on the answers of the juror taken as a whole, he entertained a fixed opinion which would bias his verdict.—*Reynolds v. U. S.,* 98 U. S. 145. Whatever opinion the juror Dixon had, was formed from newspaper reports. He does not state that it is a fixed opinion, but an opinion as to the guilt or innocence of the defendant to a certain extent,—to what extent is not shown, but more in the nature of an impression than of a formed opinion. While expressing an apprehension that he would go on the jury with a biased opinion, he distinctly and un-

qualifiedly said, that after being sworn as a juror, he could lay his opinion aside, and find a verdict upon the evidence alone. Had this juror answered, that he had a fixed opinion that would bias his verdict, this should, probably, and ordinarily would, have terminated further inquiry. In such case, the belief of the juror, that he could render an impartial verdict, uninfluenced by his opinion, is not conclusive ; for such is the organization of the human mind, that a person possessed of a fixed opinion, can not readily put it aside, and try a case *de novo* and impartially. But, considering the entire answer of the juror, we can not say that it affirmatively appears that the court erred in holding him competent.

4. The witness, Mrs. Baker, had been divorced from the defendant, and was called to testify to matters which had occurred after being divorced. With few exceptions, the wife is not a competent witness in criminal cases, for or against the husband ; and after death or divorce is incompetent to testify to any facts, information of which was obtained in the confidence and secrecy of the marital relation. But she is competent to testify to any matters which transpired subsequently to the divorce.

5. The relations existing between the accused and the injured person, when the offense is against the person or property, may tend to disclose a motive on the part of the accused, and aid in identifying him as the wrongdoer. For this purpose, such relations may be proved by the prosecution ; and the inferences to be drawn from them, in conjunction with the other circumstances of the case, and the weight to be attached to them, are in the province of the jury. *Hudson v. State*, 61 Ala. 333.

6. The confessions of the defendant appear, *prima facie*, to be free and voluntary. The court determines the admissibility of confessions. Having been admitted by the court, the jury could not rightly reject them as incompetent. In considering and determining their credibility, and the weight to which they are entitled, the jury may look to the circumstances under which they were made, but must regard them as they do any other evidence properly presented. They are not bound to accept the confessions as conclusive ; and if they were not voluntarily made, and are not consistent with the other evidence, they may reject them *in toto* as wanting in credibility. If, by comparison, the confessions are found to be in harmony and consistency with all the other evidence,

[Long v. The State.]

they may be received as true, though believed by the jury to be involuntary. But the determination of their incredibility is exclusively their province, and the court would have invaded the province of the jury, had it instructed them to reject the confessions as wanting in credibility, if they were not made freely and voluntarily.—*Young v. State*, 68 Ala. 569 ; *Redd v. State*, 69 Ala. 255.

6.    After the jury had been impanelled, and before any evidence had been introduced, the defendant moved the court to dismiss the prosecution, on the ground that he was made a State's witness on a prosecution of John Wilson for the same offense, before the mayor of the city of Mobile, and on the application of Wilson for a writ of *habeas corpus*. When an accomplice is examined as a witness by the prosecutor, and fully and fairly discloses the guilt of himself and associate, there is an implied promise, as generally regarded, that he will not be prosecuted for the same offense. In such case, the prosecuting officer may decline to institute proceedings against him, or may discontinue them, if already commenced. If this course is not pursued, the practice is, to put the defendant on trial, and, if convicted, to recommend him to executive clemency. His right not to be prosecuted, or to a pardon, is equitable only, based on the pledged faith of the public. He can not plead the facts in bar of an indictment, nor avail himself of them by motion to dismiss the prosecution.—*Whiskey Cases*, 99 U. S. 594 ; *State v. Graham*, 41 N. J. L. 15. In the present case, it is not shown that the public faith was pledged to the defendant, that he should be protected against a prosecution. No promises were made to him to testify. His right to clemency is not even equitable, and the prosecuting officer was under no obligation, expressed or implied, to discontinue the prosecution.

We have examined the other assignments of error, and discovered no error in the rulings of the court.

Affirmed.