296 So.2d 760

**Buddy Herman MATHIS, alias**

v.

**STATE.**

I Div. 217.

Court of Criminal Appeals of Alabama.

Aug. 28, 1973.

Rehearing Denied Sept. 25, 1973.

Binder, Lucas, Tharpe & Lohrmann, Jackson, Gallalee, Denniston & Edington, Mobile, for appellant.

William J. Baxley, Atty. Gen., and Joseph G. L. Marston, III, Asst. Atty. Gen., for the State.

CATES, Presiding Judge.

False pretense (Code 1940, T. 14, § 209): sentence, eight years in the penitentiary.

The indictment follows code form, T. 15, § 259, Form No. 60, and is couched in three counts. The jury's verdict was general; hence, if the evidence can support any of the three counts, the verdict is due to be sustained. We hold that it does.

I

The appellant, a construction contractor, and the Mobile County School Board entered into a contract for the renovation and repair of kitchen facilities at four Mobile County schools to be done in the 1969 summer vacation. Because of the short time available for completion, the Board awarded the contract without competitive bidding under the "emergency" provision of the competitive bid law.

Inasmuch as new equipment was required along with the renovation, the Board authorized its staff to obtain bids on new kitchen equipment. (R. 495–496). It is appellant's conduct in regard to the equipment bidding and purchase that is the subject of this appeal.

The State introduced evidence tending to show that appellant and an alleged accomplice (an employee of the School Board) approached two commercial kitchen equipment suppliers and requested bids for need-

ed equipment. Appellant allegedly led the equipment suppliers to believe that bids were to be made to him as the general contractor and directed both suppliers to add sums to their bids roughly representing appellant's claimed overhead and profit. These bids were opened in appellant's office.

The accomplice then presented the upwardly revised bids to the School Board without advising the Board of the padding. The equipment contract was awarded to Mobile Fixture and Equipment Company with a low bid of $99,511.26. Officials of Mobile Fixture testified that their bid before the additions for appellant's "overhead and profit" was $86,595.00. After adjustments to the contract, a payment of $95,104.26 was made to Mobile Fixture. Mobile Fixture then paid $12,388.26 to the appellant. Testimony of the accomplice indicated that he expected to receive gain from Mathis for his role in the scheme "down the road."

Appellant's defense was, apparently, that he had no criminal intent, and the amount he added to the bids represented his labor and supervision in regard to the installation of the kitchen equipment. Appellant did not testify.

The State contended that all of appellant's compensation was to come from his renovation contract, and that the additions to the bids of equipment suppliers was a false representation to the Mobile County School Board. Certainly it was a malicious interference with the Board's freedom to contract.

## II

Appellant filed a plea in abatement, demurrer to the indictment, motion to dismiss, and motion for change in venue.

Subsequently, appellant filed two amended motions for change of venue, and an additional motion for continuance.

All of the above motions and pleas were denied and overruled. Appellant asserts these rulings as error.

This case is a companion case to Mathis v. State, 52 Ala.App. 668, 296 So.2d 755, in which this Court decided that pretrial publicity, as evidenced by a collection of newspaper articles by stipulation made a part of the record of the present case, was not so prejudicial as to deny appellant a fair trial in Mobile County.

There we held that the relatively objective and truthful reporting of events of public interest in a county of more than 317,000 population was not prejudicial, where the trial occurred in December, 1970, following an April indictment. Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 was distinguished. Further discussion here is unnecessary.

Here the indictment was handed down April 10, 1970. Mathis went to trial on June 21, 1971, i. e., fourteen months later.

## III

Some jurors when asked if they had fixed opinions gave equivocal answers. Further interrogation brought out in each case the juror could conscientiously lay aside his predilection and go by the evidence and the court's charge.

The appellant contends that this in effect is a sophistical way of denigrating the stature of the presumption of innocence which cloaks the accused. We advert to Code 1940, T. 30, § 55, subdiv. 7, which reads:

"It is a good ground for challenge by either party:

\*  \*  \*  \*  \*  \*

7. That he has a fixed opinion as to the guilt or innocence of the defendant, which would bias his verdict. \* \* \*."

In searching for a definition of a fixed opinion, our Supreme Court in Long v. State, 86 Ala. 36, 5 So. 443, stated:

"\* \* \* The mere formation of an opinion founded on rumor or hearsay, which is subject to change on hearing the evidence, and leaves the mind of the juror free to impartially consider the

whole evidence, without giving undue credence to that which tends to prove the facts as heard, and to apply to the evidence the law as pronounced by the court, is not sufficient to disqualify. But an opinion, whether founded on rumor, or conversations with witnesses, or on observation, which is a conviction, a prejudgment, disqualifying the juror to impartially consider the whole evidence, —that which tends to prove the facts as heard, as well as that which contradicts or explains,—and to apply free from bias the law as given in charge by the court, is a fixed opinion which will bias the verdict. The mind of the juror should be in such a state of freedom, that he is capable of giving to the accused the weight of the presumption of innocence, and the benefit of a reasonable doubt. The statute affirms, in concise, intelligible, and comprehensive language, the common-law rule, as declared by Chief Justice Marshall on Burr's trial: 'That light impressions, which may fairly be supposed to yield to the testimony that may be offered, which may leave the mind open to a fair consideration of that testimony, constitute no sufficient objection to a juror; but those strong and deep impressions, which will close the mind against the testimony that may be offered in opposition to them, which will combat that testimony and resist its force, do constitute a sufficient objection to him.' "

The United States Supreme Court has adopted the essentially same meaning. In Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751, we find:

" * * * It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. * * * "

Counsel for appellant was given (and took) the opportunity to extensively interrogate each prospective juror as to his opinion of the guilt or innocence of the accused. A reading of the over 300 pages of voir dire in the transcript shows that the trial judge was most conscientious in determining which prospective jurors had abiding fixed opinions, and in excusing these persons from serving on the venire.

## IV

■ Appellant argues that his demurrer to the indictment, notably grounds I & II, should have been sustained because of vagueness. Concededly the Code form was used.

■ Of course, it is elemental constitutional law that a Legislature may not validly compress an indictment into such a meaningless acronym or other shorthand that the instrument fails to tell the prisoner of what he stands accused. 41 Am.Jur. 2d, Indictments and Informations, §§ 78 and 79.

In United States v. Hess, 124 U.S. 483, 8 S.Ct. 571, 31 L.Ed. 516, the indictment omitted the quo modo of Hess's alleged scheme to use the mails to defraud.

The opinion states (124 U.S. at 486, 8 S.Ct. at 573) pertinently:

"The statute is directed against 'devising or intending to devise any scheme or artifice to defraud,' to be effected by communication through the post-office. As a foundation for the charge, a scheme or artifice to defraud must be stated, which the accused either devised or intended to devise, with all such particulars as are essential to constitute the scheme or artifice, and to acquaint him with what he must meet on the trial.

"The averment here is that the defendant, 'having devised a scheme to defraud divers other persons to the jurors unknown,' intended to effect the same by inciting such other persons to communicate with him through the post-office, and received a letter on the subject. Assuming that this averment of "having devised" the scheme may be taken as sufficiently direct and positive, the absence of all particulars of the alleged

scheme renders the count as defective as would be an indictment for larceny without stating the property stolen, or its owner or party from whose possession it was taken."

Here the statute (Code 1940, T. 14, § 209) reads:

" * * * Any person, who, by false pretense or token, and with the intent to injure or defraud, obtains from another any money or other personal property, shall on conviction, be punished, as if he had stolen it."

In the instant indictment the charging part of the first count reads as follows:

" * * * that * * * Buddy Herman Mathis * * * did falsely pretend to the Board of School Commissioners of Mobile County, a public corporation, with intent to defraud, that he had received a legitimate bona fide bid from Mobile Fixture and Equipment Company, incorporated, in the amount of ninety nine thousand, five hundred eleven dollars and twenty six cents to sell to the said Board of School Commissioners of Mobile County, a public corporation, kitchen equipment for installation in connection with work said Buddy Herman Mathis, alias B. H. Mathis, doing business as B. H. Mathis, Contractor, was to perform as general contractor in renovating kitchens at Booker T. Washington Junior High School, Palmer School, Bienville School and Carver Junior High School, public schools in Mobile County, Alabama, and by means of such false pretense obtained from said Board of School Commissioners of Mobile County, a public corporation, for said Mobile Fixture and Equipment Company, incorporated, after sales tax had been deducted from said ninety nine thousand five hundred eleven dollars and twenty six cents, the sum of ninety five thousand one hundred four dollars and twenty six cents of which said money he received twelve thousand three hundred eighty eight dollars and twenty six cents from

Mobile Fixture and Equipment Company, incorporated, against the peace and dignity of the State of Alabama."

This indictment specifically charges the appellant with obtaining money, $12,388.26, by means of false pretense. The indictment describes the false pretense as appellant's representation to the party defrauded, the Mobile County School Board, that he had received a *legitimate bona fide bid* from Mobile Fixture and Equipment Company. The indictment sets out additional facts identifying the bid, i. e., the amount of the bid, and that the bid was for kitchen equipment purchased in connection with kitchen renovation work done by appellant at the four named schools. Much of State's evidence went to show that the bid in question was not a legitimate, bona fide bid, but rather a five-per-center's scheme to defraud the School Board.

When viewed within the mandate of Jinright v. State, 220 Ala. 268, 125 So. 606, the indictment seems to reasonably inform appellant of the charges against him, together with sufficient facts to enable him to prepare his defense.

### V

■ The performance by Mathis of the renovation contract was the occasion of another indictment. In the course of the trial sub judice the State put Mathis's accomplice on the stand. The witness, who had been theretofore convicted, testified that he had negotiated the renovation contract with Mathis for the Board.

The agreed price, this testimony tended to show, was puffed up $100,000 above what the witness thought was fair and reasonable. The appellant claims that the admission of testimony, over objection, concerning the renovation transaction, was prejudicial.

However, we consider that the formation of this contract and its negotiation could be viewed as the occasion for Mathis's persuading Mobile Fixture into submitting its

bid to him. In a broad sense, the other contract, also perpetrated with the same accomplice employee of the Board, was of the res gestae of the charged offense. See Gassenheimer v. State, 52 Ala. 313.

Also, this testimony of an "inside job" was relevant as to the modus operandi used by Mathis. Brown v. State, 37 Ala.App. 516, 74 So.2d 273 (fake lottery tickets).

We have carefully reviewed the entire record under the command of Code 1940, T. 15, § 389 and consider that the judgment below is due to be

Affirmed.

All the Judges concur.