TYSON, Judge.
Ray Williams was indicted for the murder, by use of a rifle, of his son, Hank Williams, in violation of § 13A-6-2, Code of Alabama 1975. The jury found him *1272 guilty of manslaughter for which the trial court set sentence at seven years’ imprisonment.
On May 29, 1981, just outside his residence, Hank Williams was shot and killed with a .22 caliber bullet. Several of his friends and relatives, including his father, the appellant, had come to visit Hank that day before the shooting. Most of the visitors were “drinking” and “shooting birds.”
At approximately 2:00 p. m. Jimmy Cosby and Mike Walls saw the appellant attempt to leave in his truck with his grandson, the deceased’s son. The appellant backed into a car that had blocked him in. After the owner of the car had moved it out of the way, Hank Williams, the deceased, began arguing with the appellant, insisting that the appellant could not take his grandson home with him. Cosby quickly escorted the child into the house. (R. 16). Walls took a shotgun away from the appellant who was attempting to point it at the deceased. Walls then saw the appellant pull out into the road, stop, and point a .22 rifle out his truck window “at all of them.” (R. 25). He (R. 26) and Cosby (R. 16) both heard the shots that killed Hank Williams, but neither actually saw the appellant pull the trigger.
As soon as he realized that Hank had been shot, Walls picked him up and took him to the hospital, where he died the next day.
Dr. Watwood testified (R. 39) that Hank Williams died from massive internal bleeding due to a bullet which entered his abdomen just left of his naval. Dr. Gilchrist performed an autopsy and recovered three bullet fragments which he turned over to Lonnie Hardin. Hardin, a ballistics expert determined that the bullet fragments that killed Hank Williams were fired from the .22 caliber rifle that the appellant had “pointed at” him. (R. 58).
Joe Neighbors, the police investigator who retrieved appellant’s .22 caliber rifle as evidence, also obtained a statement from the appellant which he summarized for the jury. (R. 73). He stated that the appellant denied arguing with Hank Williams but admitted that he pointed the rifle out of his truck window. However, the appellant told him that he pointed the gun at his brother-in-law, Sam McGee, that he did not think the gun was loaded, that he did not intend to shoot anybody, and that “the shooting was an accident.” Neighbors stated that appellant never actually admitted that he pulled the trigger.
The funeral home director who embalmed the deceased’s body and subsequently delivered it to Dr. Gilchrist for the autopsy testified to complete the chain of custody of the corpse and in so doing he identified a picture Dr. Gilchrist had taken of the corpse (Exhibit 3). This photograph was admitted into evidence over the appellant’s objection. (R. 64).
In his own defense, the appellant testified (R. 101) that he did not back into anyone’s car, that he did not argue with Hank Williams and that he did not point his rifle out of his truck window in Hank’s direction.
Thelma and Sam McGee were with the appellant earlier that day and saw him “run out of bullets” while shooting blackbirds. Sam was also at Hank’s house when he was shot, but did not witness the shooting.
Renee Williams, the deceased’s wife, testified for the appellant, but stated that he called her after the shooting and told her he thought that “he had shot Hank.” (R. 93). The appellant later explained (R. 102) that he told Renee “he thought Hank had been shot” even though he did not know who had shot him. (R. 103).
Evidence was introduced that Walls and the deceased had been charged with drug violations and that the deceased was “scared” that he might not live until his trial. (R. 91). Several witnesses testified that Walls placed a pistol in the deceased’s casket at the funeral.
I
Appellant argues that there was insufficient evidence to sustain his conviction. We disagree.
It is true that the state did not produce an eyewitness to the actual “pull *1273 ing of the trigger.” However, two eyewitnesses, Walls and Cosby, described the events up to the point where the appellant pointed the rifle out his truck window at the deceased. Also, the state’s ballistics expert testified that the bullet which killed the deceased was fired from the appellant’s .22 caliber rifle.
Furthermore, the statement appellant gave to the investigating officer with reference the accidental nature of the shooting as well as the testimony of the deceased’s wife, appellant’s own witness, that appellant called her and told her that he had shot the deceased lend credence to appellant’s guilt.
“Whether circumstantial evidence tending to connect the defendant with the crime excludes, to a moral certainty, every other reasonable hypothesis than that of the defendant’s guilt is a question for the jury and not the court.” Cumbo v. State, 368 So.2d 871 (Ala.Cr.App.), cert. denied, 368 So.2d 877 (Ala.1978).
There was more than enough evidence before the jury to support its conclusion that the appellant shot and killed his son, Hank Williams. Taylor v. State, 405 So.2d 946 (Ala.Cr.App.) cert. denied, 405 So.2d 951 (Ala.1981), and cases cited therein.
II
Appellant also challenges the admissibility of Exhibit 3, the photograph of the deceased’s body. Appellant contends that the prejudicial effect of this picture outweighed any probative value.
The photograph (R. 53) was a frontal view of the deceased’s face. It was not gruesome. For aught that appears, it was introduced to complete the chain of custody of the corpse. The bullet fragments subsequently removed from that corpse were then matched to appellant’s rifle.
The trial court did not err in admitting this photograph. Townsend v. State, 402 So.2d 1097 (Ala.Cr.App.1981), and cases cited therein.
This cause is, therefore, due to be and is hereby, affirmed.
AFFIRMED.
All the Judges concur.