Pete Potter was indicted for the ax murder of Mary Lois Pearson. He was found guilty as charged and sentenced to life imprisonment.
Shortly after 6:30 a.m. on January 21, 1981, Mary Lois Pearson's body was found in her bed by her daughter, Stephanie. The deceased had been cut through the neck with one blow from an ax or an ax-like object. (R.111, R.122). This blow which severed the left carotid artery and the left jugular vein caused death within minutes.
There was no evidence of a struggle of any kind and no evidence of movement by the deceased after the fatal blow was delivered. The deceased was apparently sleeping when she was killed.
The appellant, Mr. Potter, had lived with the deceased and her four children for three years prior to this incident.
On the evening of January 20, 1981, the appellant and the deceased visited friends at the home of Annie Foster. Rozelle Parker testified that during that visit she and the deceased overheard the appellant tell some other men that he was tired of the deceased going to parties with her friends and never wanting to do anything with him and that he intended to do something "crazy" to make the "white folks" (the authorities) "give [him] a thousand years." (R.149).
In her testimony, Annie Foster made no reference to this statement made on the night before the murder. In fact, she testified that the appellant had called the deceased *Page 775 
"honey" that night. However, Ms. Foster did describe an earlier incident in December, 1980, when the appellant had an argument with the deceased and the deceased exclaimed "I'm tired of you, go ahead then, kill me." (R.83).
Stephanie Pearson testified that her mother (the deceased) and the appellant had an argument that same night before she was murdered. She stated that she and her three brothers last saw their mother alive just before midnight when they went to bed. She further stated that at that time the appellant, her mother, and the four children were the only people in the house, that the doors leading into the house were usually locked by then, and that her mother and the appellant had the only keys.
She also testified that the appellant chopped their firewood with an ax that he kept in his truck.
Stephanie found her mother's body the next morning on her mother's bed, but did not know exactly when her mother was killed.
Fitzgerald Pearson, the deceased's oldest son, testified that the appellant, about a week before this incident, told him that he had lost his ax. However, Fitzgerald saw him chopping wood with another ax after that and before this incident.
The appellant did not present any evidence in his behalf. His alibi evidence was elicited from state's witnesses.
In a statement made by the appellant to Sheriff Moore, the appellant admitted that he was with the deceased on the night before the murder until she and her four children went to bed. Around midnight he left and went to spend the night with Gladys Slaughter. At approximately 5:00 a.m. the next morning he left Gladys' home, picked up his son, Ralph Potter, and his friend, Johnny Ware, and headed for the woods to cut pulpwood. He denied any knowledge of Mrs. Pearson's death before returning from work that afternoon.
Ms. Slaughter testified that the appellant spent two or three nights a month with her. On the night in question she noticed nothing unusual about the appellant's appearance or demeanor. She verified the fact that he was with her from around 12:30 a.m. until about 5:00 a.m.
Mr. Ware, and appellant's son, Ralph, each testified that on the morning of the murder they went to work with the appellant at the usual time, just after 5:00 a.m., and that they noticed nothing unusual in appellant's behavior the entire day. Ralph stated that they did not learn of Mrs. Pearson's death until they returned from work that afternoon and went to pick her up, as they normally did, at Ms. Foster's residence.
Ms. Foster testified that when the appellant was told that Mrs. Pearson had been killed, he exclaimed, "Oh, my God," and "slumped over" onto the hood of his car.
The murder weapon was never found. However, Lonnie Hardin, a "toolmarks" expert with the Alabama Department of Forensic Science determined that the blow which killed Mrs. Pearson was from the same "cutting instrument" that had been used to chop the firewood in the woodpile behind her house.
 I
Initially, appellant argues that the trial court erred in failing to grant his peremptory challenge of a prospective juror for cause pursuant to § 12-16-150 (7), Code of Alabama 1975.
The pertinent part of the record (R.3-5) is as follows:
"COURT . . .
 "Do any of you know anything about this case, other than what I just told you? (NO RESPONSE)
 "Have any of you heard anything about this case, other than what I have just told you?
 "DEBRA RACHAEL (Juror) I heard about it and I don't think I should serve because I have my mind made up.
 "COURT — Do you have a fixed opinion as to whether or not he is guilty, and would you be able to listen to the evidence and forget what you heard about this case, and forget what you may think *Page 776 
about this case, and base your verdict solely on the evidence?
"DEBRA RACHAEL — Yes.
 "LARRY MORRIS — Judge, I would challenge her for cause because she said she already had her mind made up.
 "COURT — Let's go into this a little deeper. There's going to be evidence here during the trial of this case, that is, people are going to testify, there will be physical and tangible evidence, can you put out of your mind what you know about this case, what you may have heard about this case and base your verdict solely on the evidence?
 "DEBRA RACHAEL — Well, I don't know anything about it, I just know what I heard.
 "COURT — So, you don't really know anything about it, you don't know what happened, you just heard rumors about it?
"DEBRA RACHAEL — That's right.
 "COURT — Can you put those rumors out of your mind and base your verdict solely on the evidence that comes to you from the witness stand?
"DEBRA RACHAEL — Yes.
"MITCH GAVIN — We're satisfied, Your Honor.
 "LARRY MORRIS — Did I understand you correct to say that you have already reached a verdict in your mind?
"DEBRA RACHAEL — Yes.
 "LARRY MORRIS — Well, wouldn't that play a part in your mind? I mean, could you sit over there and be completely unbiased, or would that play a part in your decision?
 "DEBRA RACHAEL — No, because I figure when they get up here they will tell the truth.
 "MITCH GAVIN — Could you totally disregard everything you may have heard about this case, completely put it out of your mind, and base your verdict solely on the evidence as it comes to you from the witness stand?
"DEBRA RACHAEL — Yes, I can.
"COURT — She is qualified.
 "LARRY MORRIS — Challenge her for cause and reserve an exception." (Emphasis added).
Prospective juror Rachael indicated that she had heard rumors
about this case, but, as the record demonstrates, she responded that she could disregard those rumors and base her verdict solely on the evidence. In such an instance, a challenge of Ms. Rachael for cause need not have been granted. Mathis v. State,52 Ala. App. 674, 296 So.2d 760, cert. denied, 292 Ala. 732,296 So.2d 764 (1973), cert. denied, 419 U.S. 1106, 95 S.Ct. 777,42 L.Ed.2d 802 (1975), and cases therein cited; McCorvey v. State,339 So.2d 1053 (Ala.Cr.App.), cert. denied, 339 So.2d 1058
(Ala. 1976). Qualifying this prospective juror was within the sound discretion of the trial court and we have found no abuse thereof. Collins v. State, 385 So.2d 993 (Ala.Cr.App. 1979), rev'd on other grounds, 385 So.2d 1005 (Ala. 1980); Glenn v.State, 395 So.2d 102 (Ala.Cr.App. 1980), cert. denied,395 So.2d 110 (Ala. 1981), and cases cited therein.
 II
Appellant also cites as error the trial court's denial of his motion to exclude the evidence at the close of the state's case. Appellant contends that the circumstantial evidence
presented by the state was insufficient to support a conviction.
As appellant explains there was no evidence which directly
connected him with the murder. There were no eyewitnesses. The murder weapon was not found. There was no fingerprint evidence at the scene. There were no traces of the deceased's blood on the appellant or his belongings.
The state's case was based solely on circumstantial evidence. The appellant and the deceased had several heated arguments, and the appellant had told others just a few hours before the murder that he was angry with the deceased and intended to "do something crazy" for which the authorities would "give [him] a thousand years."
The appellant, Potter, was the last person with the deceased while she was still alive. *Page 777 
The Pearson children testified that the appellant was there when they went to bed just before midnight, that the doors to the house were usually locked by bedtime, and that only the deceased and the appellant had keys. They did not hear any disturbance that night while they slept, but found their mother's slain body early the next morning in her own bed. The appellant was gone. There was no evidence that anyone else had been in the Pearson home that night.
The children further testified that the appellant chopped their firewood with his ax. A "toolmarks" expert testified that the "cutting instrument" (presumably an ax) which made the "chop" marks on two pieces of this firewood was the same instrument that inflicted the nearly decapitating wound on the deceased's body.
 A
This circumstantial evidence was sufficient to present the state's case to the jury because, as the trial court correctly concluded, the jury might have reasonably determined that such evidence excluded every reasonable hypothesis except that of the defendant's guilt. Cumbo v. State, 368 So.2d 871
(Ala.Cr.App.), cert. denied, 368 So.2d 877 (Ala. 1978), and cases therein cited. Whether or not it in fact excluded, to a moral certainty, every other reasonable hypothesis than that of defendant's guilt was a question for the jury and not the court. Cumbo v. State, supra; Franklin v. State, 405 So.2d 963
(Ala.Cr.App.), cert. denied, 405 So.2d 966 (Ala. 1981);Williams v. State, 412 So.2d 1271 (Ala.Cr.App. 1982). In this instance the jury's determination of guilt will not be disturbed. Franklin v. State, supra, and cases therein cited.
 B
Appellant contends, however, that the evidence connecting "toolmarks" on the deceased's body with "toolmarks" on the firewood was inadmissible because the state failed to prove an adequate "chain of custody" for the deceased's body or for the firewood. We disagree.
There was no evidence whatsoever that either the body or the wood had been tampered with in the interval between the discovery of the body and the time the "toolmark" examinations were made.
The Pearson children testified that no one moved their mother's body before the ambulance arrived. Pictures of the body were taken before it was ever moved. Testimony from the ambulance driver, the hospital emergency room personnel, the Randolph County coroner and the doctor who performed the autopsy sufficiently traced the body from the scene of the murder to the place where parts were removed for the "toolmarks" comparison. Moreover, Dr. Gilchrist testified that from a review of the pictures taken at the scene and an examination of the wound on the body, he could tell that the body had not been altered. He concluded that the wound which caused Mrs. Pearson's death was inflicted with an ax.
Dr. Gilchrist removed certain body parts from the chin and neck area and delivered them to Lonnie Hardin for the "toolmarks" comparison.
Likewise, the two pieces of firewood were sufficiently traced from the woodpile behind the Pearson residence to the Department of Forensic Science in Montgomery where Hardin performed his "toolmark" examinations.
Therefore, there was nothing improper in admitting the results of Hardin's "toolmarks" comparison. The weight and credibility of this evidence were, of course, for the jury to determine. Williams v. State, 375 So.2d 1257 (Ala.Cr.App.), cert. denied, 375 So.2d 1271 (Ala. 1979).
 III
Appellant's final contention addresses an alleged prejudicial error by the trial court in admitting testimony with reference the death of Mrs. Pearson's brother-in-law.
Mrs. Pearson's (the deceased's) brother-in-law was initially mentioned by Ann Foster in her testimony with reference an argument between the deceased and the appellant *Page 778 
a month before the murder. Ms. Foster, at the end of a long narrative answer during which she described the prior argument, quoted the appellant as having said to Mrs. Pearson: "You want me to kill you, you want the same treatment that your brother-in-law had." (R.83).
The state followed this testimony with other questions about the deceased's brother-in-law. It is the court's allowance ofthis further inquiry with reference the deceased's brother-in-law that appellant cites as error on appeal.
This additional questioning revealed only that Mrs. Pearson indeed had a brother-in-law who had died approximately two weeks before the argument witnessed by Ms. Foster. The state made no attempt to elicit and there is nothing in the record to indicate the cause of this man's death or appellant's involvement therein, if any. The state's additional questions appear to be a logical follow-up to Ms. Foster's testimony which brought the brother-in-law into focus.
Appellant argues on appeal that this evidence, which revealed that the deceased indeed had a brother-in-law who died two weeks before appellant's alleged threat, was an inadmissible reference to a possible prior offense. We need not reach the merits of this argument, however, because it was not specified as a ground of objection at trial. The general objection made during the trial, that the additional facts were irrelevant (R.84), was not sufficient to preserve this issue for our review. Ellis v. State, 38 Ala. App. 379, 86 So.2d 842 (1955), cert. denied, 264 Ala. 695, 86 So.2d 846 (1956); Lee v. State,52 Ala. App. 275, 291 So.2d 367 (1974); Manson v. State,349 So.2d 67 (Ala.Cr.App.), cert. denied, 349 So.2d 86 (Ala. 1977);Stringer v. State, 372 So.2d 378 (Ala.Cr.App.), cert. denied,372 So.2d 384 (Ala. 1979); Cook v. State, 384 So.2d 1158
(Ala.Cr.App.), cert. denied, 384 So.2d 1161 (Ala. 1980); Yatesv. State, 390 So.2d 32 (Ala.Cr.App. 1980).
For these reasons stated, the judgment and sentence of the trial court is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur.